James L. PETERSON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 63461.

Missouri Court of Appeals,
Western District.

Nov. 23, 2004.

Susan L. Hogan, Kansas City, MO, for Appellant.

Deborah Daniels, Jeremiah W. (Jay) Nixon, Atty. Gen., and Evan J. Buchheim, Jefferson City, MO, for Respondent.

Before LISA WHITE HARDWICK, P.J., ROBERT G. ULRICH and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Presiding Judge.

## I. Factual and Procedural Background

A Jackson County jury convicted Mr. James L. Peterson of second-degree murder and armed criminal action in connection with the shooting death of Mr. Floyd Edwards. The circuit court sentenced Mr. Peterson to consecutive sentences of life in prison on the murder count and thirty years in prison on the armed criminal action count. This court affirmed Mr. Peterson's conviction on direct appeal. *See State v. Peterson*, 95 S.W.3d 194 (Mo.App. W.D.2003).

Mr. Peterson filed a timely *pro se* motion for post-conviction relief under Rule 29.15. He then filed an amended motion for post-conviction relief. In his motion, Mr. Peterson argued that his trial counsel was ineffective for failing to investigate and present evidence to support his alibi defense. He further argued that trial counsel was ineffective for failing to object to the assistant prosecuting attorney's improper rebuttal closing argument.

Afterward, the motion court issued its findings of fact, conclusions of law, and order denying post-conviction relief. The motion court concluded that trial counsel's actions did not amount to ineffective assistance and that the decision not to call a witness at trial was one of trial strategy. The motion court further concluded that Mr. Peterson had alleged error but had failed to show a substantial miscarriage of justice by a preponderance of the evidence.

We conclude that the motion court clearly erred in that trial counsel was ineffective for failing to object to improper closing argument and trial counsel's failure to object was prejudicial. Accordingly, we do not address Mr. Peterson's first point that trial counsel was ineffective for failing to investigate and present evidence in support of his alibi defense. The judgment of the motion court is reversed and the case is remanded for a new trial.

## II. STANDARD OF REVIEW

■ We review the denial of Mr. Peterson's Rule 29.15 motion solely to determine whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(k);[1] *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998). The motion court's findings and conclusions are clearly erroneous if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. *Middleton v. State*, 103 S.W.3d 726, 733 (Mo. banc 2003).

## III. ANALYSIS

To prove ineffective assistance of counsel, Mr. Peterson must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that his defense was prejudiced by counsel's poor perform-

ance. *Hall*, 982 S.W.2d at 680 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Mr. Peterson "bears a heavy burden in establishing the first prong of the standard by a preponderance of the evidence, for he must overcome a strong presumption that counsel provided competent assistance." *Middleton*, 103 S.W.3d at 732.

He must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052, 80 L.Ed.2d 674. To do this, [he] must identify specific acts or omissions of counsel that resulted from unreasonable professional judgment, and the "court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance." *Id.* at 690, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

*Middleton*, 103 S.W.3d at 732–33.

To prove prejudice, Mr. Peterson "must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Hall*, 982 S.W.2d at 680. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Middleton*, 103 S.W.3d at 733 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674).

With these principles in mind, we address Mr. Peterson's second and dispositive point on appeal.

Mr. Peterson contends that trial counsel was ineffective for failing to object to comments made by the assistant prosecuting attorney during closing argument. He contends that these comments improperly suggested that the State had other information, not in evidence, pointing to Mr.

---

1. Unless otherwise indicated, all rule references are to the Missouri Court Rules (2004).

Peterson's guilt. Mr. Peterson further contends that he was prejudiced by trial counsel's failure to object to these comments because they were lengthy and repeated during the closing argument. He asserts that the case against him was otherwise weak, resting solely on the testimony of Kenneth Ray Vincent, a convicted felon. Mr. Vincent was the only eyewitness who testified at trial. He testified that he was riding in a truck along with Mr. Peterson's nephew when Mr. Peterson shot Mr. Edwards. Mr. Vincent and Mr. Peterson's nephew, James Warren, were the only eyewitnesses identified and interviewed by the police.

To prevail on an ineffective assistance claim in this context, Mr. Peterson must prove that the failure to object was not strategic and that the failure to object was prejudicial. *State v. Clay*, 975 S.W.2d 121, 135 (Mo. banc 1998). Unless he proves otherwise, we presume that the lack of objection was sound trial strategy. *See, e.g., Helmig v. State*, 42 S.W.3d 658, 679 (Mo.App. E.D.2001).

> In many instances, seasoned trial counsels do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.

*Id.*

■ Furthermore, "[c]ounsel will not be deemed ineffective for failing to make nonmeritorious objections." *Clay*, 975 S.W.2d at 135.

Mr. Peterson complains about the following comments made by the assistant prosecuting attorney in rebuttal to his closing argument:

> You remember the testimony of Detective Solomon? He told you there was more than one eyewitness. And what conclusive proof, what conclusive proof did we bring to you that there was one more eyewitness?

> Remember his testimony? Remember what he said? He said he rent [sic] to go visit Kenneth Ray Vincent in Leavenworth, and he went there with Detective Keith Curcoff, and he went there on August 14th of 2000.

> And what conclusive piece of evidence do we have that they had some idea of who the killer was? State's Exhibit No. 3. State's Exhibit No. 3. They went to Leavenworth with this photo spread. The defendant would have you believe that they just picked out somebody's face and went to Leavenworth for no reason at all.

> They went to Leavenworth because they knew that Kenneth Ray Vincent was also present. He was also a witness, an eyewitness, and they had this photo spread. This is conclusive proof. They didn't come back to Kansas City after Kenneth Ray Vincent told them who killed the victim. The police already knew who the executioner was.

> That's significant because the case does not rise and fall on Kenneth Ray Vincent's testimony. Although Kenneth Ray Vincent was the only witness with the courage to come in here and testify—we couldn't find James Warren. We would have loved to put him on for you, the defendant's nephew. But the case does not rise and fall on Kenneth Ray Vincent.

And this comment:

> But is [Mr. Vincent] lying? Absolutely not. Remember this. These aren't the State's witness [sic]. This is his buddy. Don't acquit him because his buddy finks him out. Remember Kenneth Ray Vincent wasn't the first person to implicate this defendant. That's why they came to prison with the photo spread.

Trial counsel did not object to any of these comments. It appears to us, though, that an objection should have been made.

The record before us, therefore, belies the usual presumption that the lack of objection amounted to sound trial strategy. Nonetheless, Mr. Peterson must prove that the assistant prosecuting attorney's comments warranted objection and that the failure to object was prejudicial.

■ Mr. Peterson concedes that the assistant prosecuting attorney has the right to argue the evidence and the reasonable inferences from that evidence. *See State v. Weathersby,* 935 S.W.2d 76, 79 (Mo. App. W.D.1996). But he argues that the assistant prosecuting attorney went beyond arguing the evidence and the reasonable inferences from that evidence here by referring to matters outside the evidence and by implying that the assistant prosecuting attorney had knowledge of such matters that pointed to Mr. Peterson's guilt. "The law draws a fine line on statements that a prosecutor can make during closing argument." *State v. Whitfield,* 837 S.W.2d 503, 511 (Mo. banc 1992). While the assistant prosecuting attorney can argue the evidence and the reasonable inferences from that evidence, the assistant prosecuting attorney cannot "make statements that imply a knowledge of facts not before the jury." *Id. See also Weathersby,* 935 S.W.2d at 79 ("It may be permissible for a prosecutor to refer to facts that are not before the jury so long as those facts do not imply any special knowledge of evidence pointing to a defendant's guilt.").

■ Mr. Peterson maintains that the assistant prosecuting attorney's comments in this case crossed the line because "there was no evidence that anyone else had implicated Mr. Peterson as the shooter, or that Detective Solomon acted on such in-formation in deciding to interview Kenny Ray Vincent."

We agree in part. Detective Solomon testified that he had interviewed two eyewitnesses to the crime: Kenneth Ray Vincent and James Warren. To the extent that the assistant prosecuting attorney was simply reminding the jurors that the police had identified another eyewitness to the crime in addition to Mr. Vincent, the assistant prosecuting attorney was properly commenting on evidence that was in the record and before the jury. Counsel cannot be deemed ineffective for failing to make non-meritorious objections to such comments. *Clay,* 975 S.W.2d at 135.

That James Warren witnessed the murder, however, does not mean that Mr. Warren implicated Mr. Peterson as the murderer. Detective Solomon merely identified Mr. Warren as a witness to the crime; the record does not reflect whom Mr. Warren witnessed committing the crime, however. To the extent that the assistant prosecuting attorney was implying that Mr. Warren—or anyone else—implicated Mr. Peterson as the murderer, we believe that the assistant prosecuting attorney's comments were not supported by the evidence or by any reasonable inferences from the evidence. *Cf. State v. Storey,* 901 S.W.2d 886, 900, 901–02 (Mo. banc 1995) (in penalty-phase closing argument, prosecutor improperly argued that case involved "about the most brutal slaying in the history of this county" where there was no evidence in the record to substantiate this assertion of personal knowledge and also improperly argued that victim's brother would have been justified in taking the defendant's life if he had seen the defendant murdering his sister where the brother did not, in fact, see the murder).

Although the State argues that it is reasonable to infer from the evidence that

someone implicated Mr. Peterson to make the police suspect Mr. Peterson and to prompt the police to prepare the photographic lineup that they showed to Mr. Vincent, this argument does not withstand careful scrutiny. The only two witnesses identified in the record who might have implicated Mr. Peterson were Mr. Vincent and Mr. Warren. The record belies the assertion that Mr. Warren implicated Mr. Peterson and led the police to prepare the photographic lineup shown to Mr. Vincent. Detective Solomon testified that he interviewed Mr. Warren on September 14, 2000, one month *after* showing the photographic lineup to Mr. Vincent. Moreover, detective Solomon did not explain the circumstances that led the police to prepare the photographic lineup.

■ We also disagree with the State that the assistant prosecuting attorney's arguments constituted proper retaliation for comments made by trial counsel during closing argument. Generally, "[a] defendant may not provoke reply by arguing outside of the record and then assert error based on the State's retaliation." *State v. Johns,* 34 S.W.3d 93, 117 (Mo. banc 2000). The assistant prosecuting attorney therefore has "considerable leeway" to make retaliatory comments during closing argument, even if those comments otherwise would be improper. *Aaron v. State,* 81 S.W.3d 682, 697 (Mo.App. W.D.2002) (internal quotation marks and citation omitted).

The State argues that the assistant prosecuting attorney's comments constituted proper retaliation for trial counsel's argument "that the only reason [Mr. Peterson] was implicated in the murder was because Vincent told officers that [Mr. Peterson] was the murderer." The State does not cite any part of the transcript to support this characterization of trial counsel's closing argument. Having reviewed the transcript of trial counsel's closing argument ourselves, however, we find that trial counsel did argue that Mr. Vincent's testimony was "the only piece of evidence to suggest my client was involved in this crime in any way."

This argument did not justify retaliation, however, because it was based upon the evidence (or lack thereof) in the record. Contrary to the assistant prosecuting attorney's argument, the case presented to the jury certainly appears to "rise and fall" on Kenneth Ray Vincent's testimony. Trial counsel's closing argument, therefore, did not argue matters "outside of the record" such that it provoked a reply referring to matters outside of the record. *See Johns,* 34 S.W.3d at 117 (counsel provokes such a reply by arguing "outside of the record").

■ Finally, we conclude that Mr. Peterson has shown "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Hall,* 982 S.W.2d at 680. As the Missouri Supreme Court has said, "[a] prosecutor's assertions of personal knowledge ... are apt to carry much weight against the accused when they should carry none because the jury is aware of the prosecutor's duty to serve justice, not just win the case." *Storey,* 901 S.W.2d at 901 (internal quotation marks omitted). "[T]his form of argument essentially turns the prosecutor into an unsworn witness not subject to cross-examination." *Id.*

Here, the assistant prosecuting attorney's comments are especially troublesome because the State presented no physical evidence linking Mr. Peterson to the crime and the only witness who testified that Mr. Peterson committed the crime was Mr. Vincent, a convicted felon with credibility problems (Mr. Vincent never reported the crime to the police or to his probation and parole officers).

Accordingly, we conclude that Mr. Peterson has established that trial counsel was ineffective and that he was prejudiced as a result. The motion court clearly erred in determining otherwise. The judgment of the motion court is reversed and the case is remanded for a new trial.

LISA WHITE HARDWICK, P.J. AND ROBERT G. ULRICH J. concur.