**STATE of Missouri, Respondent,**

v.

**Kevin COLLINS, Appellant.**

**No. ED 91542.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 26, 2009.

Application for Transfer to Supreme Court
Denied June 25, 2009.

Application for Transfer Denied
Sept. 1, 2009.

738

Jessica Hathaway, Office of the Missouri Public Defender, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, James B. Farnsworth, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Kevin Collins (Defendant) appeals from the Judgment entered by the Circuit Court of the City of St. Louis, following a jury trial, convicting him of one count of robbery in the first degree, in violation of Section 569.020, RSMo 2000.[1] The trial court sentenced Defendant to thirteen years of incarceration. We affirm the trial court's Judgment.

## Background

On November 6, 2006, Defendant was indicted as a prior felony offender on one count of robbery in the first degree, in violation of Section 569.020, one count of armed criminal action, in violation of Section 571.015, and one count of attempted burglary in the first degree, in violation of Section 564.011, resulting from two incidents on March 15, 2005.[2]

Defendant was tried by a jury between April 30 and May 1, 2008. During jury selection, after the prosecutor made his peremptory strikes, Defense Counsel raised a Batson[3] challenge to the strike of venireperson A.C. (A.C.) because of her race and gender. The following exchange took place on the record:

[Defense Counsel]: Judge, I move under Batson versus Kentucky that the prosecutor's peremptory strike of [A.C.], juror 238, be disallowed on the grounds that it's an improper attempt to exclude this juror on the basis of her race and gender and violation of [Defendant's] and [A.C.'s] right to due process and equal protection of the law as guaranteed by the Fourteenth Amendment to the U.S. Constitution, and Article I, II and X of the Missouri Constitution. I ask the Court to take judicial notice that [A.C.], juror number 238, is a black female.

THE COURT: Court takes judicial notice and notes that. [Prosecutor], do you have any response?

. . .

[Prosecutor]: . . . [A.C.] is the only person that said she had a close relative, her brother, who was accused of statuto-

---

1. All further statutory references are to RSMo 2000, unless otherwise indicated.

2. Defendant does not contest the sufficiency of the evidence on appeal, thus an extensive

recitation of the facts surrounding the crimes are not necessary.

3. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

ry rape. And as such I think it would be a bad choice for the State.

THE COURT: [Defense Counsel], do you have a response?

[Defense Counsel]: Well, Judge, just in terms of a close relative being charged with a crime, juror number 398, [K.G.], said her dad was charged with trespassing and her brother was charged with breaking and entering. And [K.G.] is a white female.

THE COURT: So what are you saying?

[Defense Counsel]: She's similarly situated.

THE COURT: [Prosecutor]?

[Prosecutor]: Well, I would hardly consider rape and trespassing to be of equal weight, as far as crimes go. Or even breaking and entering. So, I don't think that they are similarly situated.

THE COURT: How long have you been a prosecutor, [Prosecutor]?

[Prosecutor]: Thirty-one years.

THE COURT: Okay. I'm going to allow the strike of [A.C.]. Anybody else?

After jury selection, the trial continued with both the State and Defendant presenting evidence, though Defendant did not testify. During trial the State failed to introduce any evidence that Defendant was a prior offender. Accordingly, the trial court did not make a finding of fact that Defendant was a prior offender.

The jury found Defendant guilty of robbery in the first degree, but not guilty of the other two charges. On June 19, 2008, the trial court held Defendant's sentencing hearing. During the sentencing hearing, Defense Counsel requested the trial court consider a community based sentence. The trial court responded to this request by stating:

Your attorney hit on an interesting thing, community sentence, meaning she wants me to release you today to go into a series of programs where you would be out of prison and you'd be out into the community working in different programs and things like that.

And, there's a couple things about that. First, I think for someone to be eligible for a program like that they have to know that they committed the crime that they've been convicted of, they have to have remorse. All right? They have to feel some type of pain for the pain that they have inflicted on these two victims here; and, I don't see that from you. All right.

Now, I understand why you're doing it. You went to trial and you want to maintain your innocence to the bitter end. You have your family standing behind you; and, the last people that you would want to admit that you robbed or tried to break into one house of a woman and then rob the Bosnian pizza man probably with a toy gun would be the people standing behind you. For a lot of reasons you don't want to admit to me you did this; and, that's the decision that you have made. All right. And, that's fine. Okay. But don't expect something from me if you're not willing to give me something, okay, No. 1.

No. 2, the community—I've reached the point now in this case—now it is my case; not [the prosecutor's] case; not [Defense Counsel's] case; really not your case, because you made certain decisions to get yourself here. You decided to do this robbery and the attempt break-in, you decided to go to trial; all things that you in your free will you're willing to do. Now it's up to me to do something, all right? And, what I have to do, I have to balance the needs of you and all that you bring or don't bring, developmentally disabled, lower IQ, lack of education, lot of time on the streets, all those things, and then I have to look at the community on the other end. And, I have to balance the two and see

do people have a right to feel safe in their homes without fear of them being kicked in by a gang of boys. Does a pizza delivery man have the right to feel safe and secure when he goes out and makes his deliveries and not believe that someone is going to stick a gun in his face to take a warming bag. And, I think people have a right to those things. I do. I think people have a right in the society to be safe. And, that's what I'm trying to balance. And that's my thing here, okay?

The trial court then sentenced Defendant to thirteen years of incarceration. Defendant filed a timely notice of appeal on June 26, 2008. This appeal follows.

### Points on Appeal

Defendant presents three points on appeal. First, Defendant alleges the trial court erred in overruling his *Batson* challenge because the ruling violated his and A.C.'s constitutional rights. Defendant asserts the prosecutor's proffered reason for his peremptory strike of A.C. was pretext for discrimination because the explanation had no rational relationship to the case and the prosecutor failed to strike a similarly situated white venireperson.

In his second point, Defendant claims the trial court plainly erred in sentencing Defendant to thirteen years of imprisonment without jury sentencing. Defendant asserts the sentence violated his statutory and constitutional rights because the State failed to present any evidence that he was a prior felony offender and the trial court did not find that he was a prior felony offender. Because the State failed to present evidence of Defendant's prior conviction before the case was submitted to the jury, Defendant asserts he was entitled to jury sentencing.

Third, Defendant argues that the trial court plainly erred and abused its discretion in sentencing him to thirteen years of

imprisonment because the sentence was imposed in violation of his constitutional rights. Defendant claims the thirteen year sentence was imposed expressly in response to him having exercised his right to trial by jury.

### Discussion

### *Point I—Batson Challenge*

In his first point, Defendant alleges the trial court erred in overruling his *Batson* challenge to the prosecutor's peremptory strike of A.C. because the ruling violated his and A.C.'s constitutional rights. Defendant alleges the prosecutor's proffered reason for the strike was a pretext for discrimination because the proffered reason had no rational relationship to the case at hand and the prosecutor failed to strike a similarly situated white venireperson. We disagree.

### *Standard of Review*

A trial court's finding on a *Batson* challenge will be set aside only if it is "clearly erroneous." *State v. McFadden (McFadden II)*, 216 S.W.3d 673, 675 (Mo. banc 2007). A finding is "clearly erroneous" if the reviewing court is left with a "definite and firm conviction that a mistake has been made." *Id.* We will not consider grounds for *Batson* challenges that were not raised in the trial court. *State v. Broom*, 281 S.W.3d 353, 355–57 (Mo.App. E.D.2009).

### *Analysis*

The United States Supreme Court held in *Batson v. Kentucky* that the Equal Protection Clause guarantees a defendant that venirepersons will not be excluded from the jury venire on account of race. 476 U.S. at 86, 106 S.Ct. 1712. The Supreme Court reasoned that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal

protection because it denies him the protection that a trial by jury is intended to secure." *Id.* at 86, 106 S.Ct. 1712. As such, the Equal Protection Clause forbids a prosecutor from challenging a potential juror solely on account of the juror's race or on the assumption that African–American jurors, as a group, would be unable to impartially consider the State's case against an African–American defendant. *Id.* at 89, 106 S.Ct. 1712. The *Batson* analysis was extended by the United States Supreme Court to also prohibit the use of gender-based strikes in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

█ Missouri has adopted a three-step process for evaluating a *Batson* challenge. *State v. Barnett*, 980 S.W.2d 297, 302 (Mo. banc 1998). First, a defendant must object to the State's peremptory strike by identifying the protected group to which the venireperson belongs. *Id.*; *See State v. Johnson*, 207 S.W.3d 24, 35 (Mo. banc 2006) ("Parties cannot exercise peremptory challenges to remove potential jurors solely based on the jurors' gender, ethnicity, or race."). Second, the burden then shifts to the State to come forward with a race-neutral and/or gender-neutral explanation for striking the venireperson, which must be something more than simply a denial of a discriminatory purpose. *McFadden II*, 216 S.W.3d at 675; *Barnett*, 980 S.W.2d at 302. Third, assuming the State articulates an acceptable explanation, the burden then shifts to the defendant to show the State's explanation was merely pretextual, and that, in fact, the strike was motivated by racial or gender discrimination. *State v. Williams*, 97 S.W.3d 462, 471 (Mo. banc 2003); *Barnett*, 980 S.W.2d at 302. The trial court's primary concern in evaluating a *Batson* challenge is the "plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." *State v. McFadden (McFadden I)*, 191

S.W.3d 648, 651 (Mo. banc 2006), *quoting State v. Parker*, 836 S.W.2d 930, 933 (Mo. banc 1992). Using this three-step process, we find the trial court did not clearly err in denying Defendant's *Batson* challenge because Defendant failed to overcome his burden of showing the State's proffered reason for the strike of A.C. was merely a pretext for discrimination.

Here, Defendant's timely objection to the State's use of a peremptory strike to remove A.C., a black woman, satisfies the first step of our inquiry into a *Batson* challenge. Defendant specifically objected that "under Batson versus Kentucky that the prosecutor's peremptory strike of [A.C.], juror 238, be disallowed on the grounds that it's an improper attempt to exclude this juror on the basis of her race and gender." Defendant made it clear he was raising a *Batson* challenge and identified the cognizable protected group to which the venireperson in question belonged. *Barnett*, 980 S.W.2d at 302.

Proceeding to the second step of our inquiry into Defendant's *Batson* challenge, the prosecutor responded to Defendant's objection by explaining that he exercised a peremptory strike on A.C. because "[A.C.] is the only person that said she had a close relative, her brother, who was accused of statutory rape. And as such I think it would be a bad choice for the state." (Tr. 128) A "race-neutral explanation" in the context of a *Batson* challenge simply means "an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). This second step of the *Batson* challenge process does not require an explanation that is persuasive, or even plausible. *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The issue is simply the facial validity of the prosecutor's explanation and "[u]nless a discriminatory intent is inherent in the prosecutor's expla-

nation, the reason offered will be deemed race neutral." *Id.*; *Hernandez,* 500 U.S. at 360, 111 S.Ct. 1859. While the trial court did not make a specific finding on the record that the prosecutor's proffered reason was race-neutral, it moved forward to the third step of its review of Defendant's *Batson* challenge. Given this fact, and the trial court's failure to state otherwise, we proceed on the premise that the trial court found the prosecutor's reason race-neutral. In any event, given the guidelines discussed in *Purkett,* we see no reason to find the prosecutor's proffered reason was anything but race-neutral, and find the State met its burden by providing a race-neutral reason for striking venireperson A.C.

Once the State produces a facially valid explanation, the burden then shifts back to the defendant to demonstrate that the State's proffered reason was mere pretext for purposeful discrimination. *Purkett,* 514 U.S. at 769, 115 S.Ct. 1769 (noting that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from the opponent of the strike); *Johnson,* 207 S.W.3d at 35. Because the State's proffered reason for striking A.C. was race-neutral, we now examine this third step of the *Batson* challenge inquiry, i.e., we consider the issue of pretext.

Defendant argues that the State's race-neutral explanation for striking A.C. is merely a pretext because the stricken black venireperson was similarly situated to a white venireperson, K.G. Defendant notes that, "in terms of a close relative being charged with a crime, juror number 398, [K.G.], said her dad was charged with trespassing and her brother was charged with breaking and entering. And [K.G.] is a white female." While the venirepersons have close relatives charged with crimes, the State argues that the difference in the

severity of the crimes makes the venirepersons not similarly situated. Specifically, at trial the prosecutor stated that he "would hardly consider rape and trespassing to be of equal weight, as far as crimes go. Or even breaking and entering. So, I don't think that they are similarly situated." After inquiring into the prosecutor's length of service and experience, the trial court ruled to allow the prosecutor's strike of A.C.

The trial court has considerable discretion in determining pretext. The trial court's main consideration is the plausibility of the prosecutor's given explanation and whether the prosecutor purposefully discriminated in exercising a peremptory strike in light of the totality of the facts and circumstances surrounding the case. *Johnson,* 207 S.W.3d at 35; *see also McFadden II,* 216 S.W.3d at 676 (acknowledging that "peremptory strikes are subjective, and great reliance is placed on the trial court's assessment of the legitimacy of the State's explanation"). At this step in the process, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *State v. Marlowe,* 89 S.W.3d 464, 469 (Mo. banc 2002). The trial court also considers the presence of similarly situated white jurors who were not struck. *Johnson,* 207 S.W.3d at 35. While not dispositive, this factor is so relevant in determining pretext that it is "crucial." *Marlowe,* 89 S.W.3d at 469; *Barnett,* 980 S.W.2d at 303 (stating that while the existence of similarly situated white jurors who were not struck is some proof of pretext, this is not dispositive).

As he argued at trial, Defendant continues to assert that A.C., a black female, and K.G., a white female, were similarly situated because they both had a close relative who had been accused of a crime.[4] Defen-

---

**4.** Defendant also makes the argument that the State's proffered reason for striking A.C. has

no logical relevance to the case at hand; how-

dant argues this similarity is evidence of purposeful discrimination by the State. On this allegation alone, we are unwilling to find the trial court committed clear error.

We agree with the State's argument that venirepersons A.C. and K.G. were not sufficiently similar to demonstrate pretext for discrimination. It is clear that the crimes with which the venirepersons' respective relatives were charged with were not of equal severity. A.C.'s brother was previously charged with statutory rape, a crime against person. K.G.'s father was charged with trespassing and her brother was charged with breaking and entering, both crimes against property. The dissimilarities between the crimes charged are real, and not merely perceived. This critical distinction precludes us from considering these two venirepersons to be similarly situated. Statutory rape is a serious crime violating the dignity and person of the victim. Persons convicted of statutory rape are often viewed with scorn, disgust, and vile by society. Having a family member charged with statutory rape can be extremely emotional and distressing to the family. While we do not minimize the seriousness of being charged with trespass or breaking and entering, these categories of crimes are simply in an entirely different realm, and do not evoke the same emotional response. The State reasonably and logically could have believed the differences in the nature of the crimes charged to be significant. A juror's reaction to evidence presented at trial may very well be affected by his or her personal emotional response to a family member being charged with statutory rape. That reaction might vary significantly from a juror who did not have a family member charged with statutory rape. As such, the explanation offered by the prosecutor for striking A.C. and not K.G. is reasonable, and unrelated to impermissible discrimination. Defendant failed to demonstrate that the State's proffered reason for striking A.C. was pretextual and that the strike was racially, or gender, motivated. We do not find the trial court clearly erred in allowing the State's peremptory strike of A.C. Defendant's first point is denied.

### Point II—Prior Felony Offender Status

In his second point, Defendant argues the trial court plainly erred in sentencing Defendant without jury sentencing because the State failed to present any evidence that Defendant was a prior felony offender, and Defendant was not found by the trial court to be a prior felony offender. We agree that the trial court erred when it sentenced Defendant without a jury. However, we also find Defendant waived that right and thus his point is denied.

### Standard of Review

Defendant concedes that he failed to raise the issue of jury sentencing at trial. This Court therefore may only conduct review for plain error under Rule 30.20.[5] *State v. Weaver*, 178 S.W.3d 545, 547 (Mo. App. W.D.2005). Rule 30.20 provides, in pertinent part, that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted." Rule 30.20. "The plain error rule should be used sparingly

---

ever, Defendant failed to make this argument at trial. As other courts have held, we will decline to review an argument of pretext for the first time on appeal. *See Barnett*, 980 S.W.2d at 303 (finding a point made on appeal was not preserved and therefore is waived); *State v. Clark*, 280 S.W.3d 625, 631–

32 (Mo.App. W.D.2008); *State v. Johnson*, 220 S.W.3d 377, 383 (Mo.App. E.D.2007). Thus we do not review this alternative argument.

5. All rule references are to Mo. R.Crim. P.2008, unless otherwise indicated.

and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *State v. Darden*, 263 S.W.3d 760, 762 (Mo. App. W.D.2008). In determining whether to exercise our discretion under the plain error rule, we look to determine whether on the face of the defendant's claim substantial grounds exist for believing the trial court committed a "plain error" which resulted in manifest injustice or a miscarriage of justice. *Id.* "Plain error" is error that is evident, obvious, and clear. *Id.*

Two steps are involved in plain error review. *Id.* First, we must determine whether the trial court committed an evident, obvious, and clear error, which affected the substantial rights of the defendant. *Id.* at 762–63. When evident, obvious, and clear error is found in the first step, the second step of plain error review requires this Court to determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Id.* at 763. To be entitled to a reversal on a claim of plain error, a defendant must demonstrate that the trial court's action was not only erroneous, but also that the error "so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected." *Broom*, 281 S.W.3d at 358–59.

An unauthorized sentence affects substantial rights and results in manifest injustice, justifying plain error review. *Drennen v. State*, 906 S.W.2d 880, 882 (Mo.App. E.D.1995). "Where [a] defendant has been improperly sentenced as a prior or persistent offender, a manifest injustice has occurred and it is appropriate for plain error." *State v. Dixon*, 24 S.W.3d 247, 250 (Mo.App. E.D.2000).

*Analysis*

While there is no constitutional right to jury sentencing, Missouri provides a statutory right to jury sentencing unless (1) the defendant requests in writing, prior to voir dire, that the trial court assess punishment, or (2) the State pleads and proves the defendant is a prior or persistent offender. Section 557.036; *see State v. Emery*, 95 S.W.3d 98, 102 (Mo. banc 2003). In the case of jury sentencing, one function of the jury is to set a ceiling on the sentence the defendant will receive. *Emery*, 95 S.W.3d at 102. Although the trial court judge may then impose a lesser punishment than recommended by the jury, the trial court may not lawfully exceed the recommended punishment. *Id.* However, in those situations enumerated in Section 557.036, the trial court judge sentences the defendant rather than allowing the jury to recommend a sentence. Section 557.036.2(2); *see also Emery*, 95 S.W.3d at 100.

A defendant may be sentenced as a prior offender under Section 558.021.1 when (1) the indictment pleads all essential facts warranting a finding that the defendant is a prior offender, (2) evidence is introduced establishing sufficient facts proving beyond a reasonable doubt that the defendant is a prior offender, and (3) the trial court makes findings of fact supporting its finding beyond a reasonable doubt that the defendant is a prior offender.[6] A defendant's prior offender status must be pleaded, established, and found before the case is submitted to the jury. Section 558.021.2.

Although Defendant was charged in the indictment as a prior offender under Section 558.016, both the State and Defendant admit that the State failed to present any

---

**6.** Under Section 558.016, a "prior offender" is one who has pled guilty to, or has been found guilty of, one felony.

evidence at trial to prove Defendant's prior offender status as required by Section 558.021.2. While the parties agree that the issue of prior offender status was not properly proven, they disagree as to how this Court should remedy the error. Defendant argues that the proper remedy is to remand the case to the trial court for jury sentencing in accordance with the procedures outlined in Section 557.036. The State, however, argues that under *Emery*, Defendant waived his right to jury sentencing.

■ The record is clear that no evidence of Defendant's prior felony conviction was presented to the trial court. Missouri statutes require the State to present evidence of Defendant's prior offenses prior to submitting the case to the jury in order to have Defendant sentenced as a prior offender. When the State failed to present evidence of Defendant's prior offense before the case is submitted to the jury, there was no basis upon which Defendant could be sentenced by the trial court as a prior offender. Section 558.021.2; *Emery*, 95 S.W.3d at 101. As such, the trial court erred in removing Defendant's sentencing from the jury. *See Emery*, 95 S.W.3d at 101.

■ However, while the trial court clearly erred by not allowing jury sentencing, we find that Defendant waived his rights to be sentenced by a jury. Our Supreme Court found in *Emery* that a defendant "waive[s] his statutory right to a jury-recommended sentence where he allow[s] the judge to determine his sentence without raising his right to have the jury recommend a sentence." *Id.* at 102. The Supreme Court in *Emery* analyzed a situation very similar to the facts in this case. In *Emery*, the State failed to offer evidence that the defendant was a prior and persistent offender prior to the submission of the case to the jury. *Id.* at 102–03. The defendant did not object to the judge-sentencing at trial or at his sentencing. *Id.* The *Emery* Court found that had the defendant's counsel timely raised the issue, the State could have realized the error and offered evidence of the defendant's prior and persistent offender status. *Id.* at 103. However, because the defendant "chose to sit on his statutory right," the *Emery* Court held that the Defendant "cannot now be deemed entitled to a jury-recommended sentence" because "[h]e has waived that right." *Id.* Consistent with the Supreme Court's finding in *Emery*, we find Defendant waived his statutory right to jury sentencing when he failed to avail himself of that right at trial, and did not object to the trial court's sentencing.

We are mindful of the strict requirements imposed by Section 558.021, and the recent pronouncement our Supreme Court has made on these requirements.[7] However, even though the trial court erred in taking Defendant's sentencing away from the jury, the record supports our finding that Defendant waived his right to jury sentencing. Point denied.

### Point III—Sentencing Violation

In his third point, Defendant argues the trial court's sentence of thirteen years of

---

7. In *State v. Teer*, the Supreme Court expressly held that "[t]he plain language of section 558.021.2 imposes a mandate requiring that prior offender status be pleaded and proven prior to the case being submitted to the jury." 275 S.W.3d 258, 261 (Mo. banc 2009). *Teer* does not affect our finding, which flows from Defendant's waiver of his right to jury sentencing. While the State's failure to present evidence of Defendant's prior offense before the case was submitted to the jury violated the statutory mandates of Section 558.021 and deprived the trial court of a basis to sentence Defendant as a prior offender, Defendant's waiver of his right to jury sentencing distinguishes this case from *Teer*, and aligns our decision with the Supreme Court's holding in *Emery*.

imprisonment violates his constitutional rights because the trial court's imposition of his sentence was made in response to Defendant exercising his right to a jury trial. We disagree.

### Standard of Review

 While typically a court's sentencing decision is reviewed for abuse of discretion, Defendant failed to preserve this issue for appeal when he did not object to the sentence imposed. *State v. Palmer*, 193 S.W.3d 854, 857 (Mo.App. S.D.2006). As such, we review this point for plain error only, as discussed *supra* in Point II.

### Analysis

 Section 557.036.1 provides that a trial court shall decide the extent or duration of a defendant's sentence under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant. The trial court has a duty to impose a sentence on a case-by-case basis, and to fashion the punishment to both the crime and the criminal. *Palmer*, 193 S.W.3d at 857. We assume the trial court's experience and expertise enables the trial court to consider appropriate sentencing factors and to disregard improper matters. *State v. Lindsey*, 996 S.W.2d 577, 579 (Mo.App. W.D.1999). Trial courts have very broad discretion in their sentencing function. *Id.* at 580.

 Although the trial court has substantial discretion when imposing sentences, the discretion is not without limits. It is "fundamental that one convicted of a crime must not be subjected to a more severe punishment simply because he or she exercised a constitutional right." *Palmer*, 193 S.W.3d at 856. For instance, a trial court may not use the sentencing process to punish a defendant, notwithstanding his guilt, for exercising his right to a full and fair trial. *Lindsey*, 996

S.W.2d at 580; *see also State v. Wright*, 998 S.W.2d 78, 83 (Mo.App. W.D.1999) ("Whether a defendant exercises his constitutional right to trial by jury to determine his guilt or innocence must have no bearing on the sentence."). While it is fundamental that a trial court cannot punish a defendant more harshly for exercising his right to plead not guilty, a trial court may, however, take into account the character of the defendant, including the defendant's attitude concerning the offense. *Lindsey*, 996 S.W.2d at 580. A trial court does not err in sentencing a defendant when it considers other factors aside from the defendant's assertion of his constitutional right, so that a comment on the defendant's assertion of his right is not the determinative factor in imposing sentence. *Palmer*, 193 S.W.3d at 857.

Defendant argues that the trial court based its sentence, in large part, on Defendant's decision to proceed to trial rather than plead guilty. In support of this argument, Defendant cites to the trial judge's language during the sentencing hearing where the judge stated:

... I think for someone to be eligible for a program like that they have to know that they committed the crime that they've been convicted of, they have to have remorse. All right? They have to feel some type of pain for the pain that they have inflicted on these two victims here; and, I don't see that from you. All right.

Now, I understand why you're doing it. You went to trial and you want to maintain your innocence to the bitter end.... For a lot of reasons you don't want to admit to me you did this; and, that's the decision that you have made. All right. And, that's fine. Okay. But don't expect something from me if you're not willing to give me something, okay, No. 1.

Defendant argues that the comments made by the trial court is evidence that the court improperly considered Defendant's lack of remorse, and took into consideration that Defendant "went to trial" and maintained his "innocence to the bitter end." Based on the record before us, we do not reach the same conclusion and find that the trial court did not err in its considerations regarding Defendant's sentencing.

While the trial court mentioned that Defendant "went to trial" and "maintain[ed][his] innocence to the bitter end," we do not read these comments alone, but consider these remarks in the context of the entire sentencing proceedings. Nor do we find these comments alone support a finding that the trial court improperly punished Defendant for exercising his right to a trial. Instead, we read the trial court's comments as statements regarding Defendant's apparent lack of remorse and failure to take appropriate responsibility for his actions, both appropriate considerations when considering sentencing. *See Lindsey*, 996 S.W.2d at 580 (noting that a trial court may take into account the character of the defendant, including the defendant's attitude concerning the offense, when considering sentencing). Further, as we review the trial court's comments in the context of the entire sentencing proceedings, it is clear the court considered a number of factors in determining Defendant's sentence, including not only Defendant's lack of remorse and failure to take responsibility for the crime, but Defendant's hesitancy to admit guilt in the presence of family members, developmental disability, lower IQ, lack of education, great deal of time on the streets, and the safety of the community and the right of other community members to feel safe in society. Even if we were to read the trial court's statements as a comment on Defendant's assertion of his right to trial, given the totality of the comments and reading them in the context made, we do not view said comments as the determinative factor in considering Defendant's sentence given the other factors clearly considered by the trial court. *See Palmer*, 193 S.W.3d at 857 ("[A] trial court does not err in sentencing when it considers other factors aside from a defendant's assertion of his or her constitutional right, so that a comment on the defendant's assertion of rights is not the determinative factor in imposing sentence."). The trial court's statements clearly reflect consideration of both Defendant's crime and Defendant himself. The trial court specifically noted that the reason he sentenced Defendant to thirteen years of imprisonment was that "[Defendant] need[ed] to be removed from society so people can feel somewhat safe when they deliver their pizzas or when they sit in their house." We find no indication the trial court's sentence punishes Defendant solely for proceeding to trial.

We are not convinced the trial court impermissibly subjected Defendant to a more severe punishment because he exercised his constitutional right to a jury trial. Considering all of the factors, we find the trial court did not plainly err in sentencing Defendant to thirteen years of imprisonment. Defendant's third point is denied.

## Conclusion

The judgment of the trial court is affirmed.

GLENN A. NORTON and PATRICIA L. COHEN, JJ., Concur.