

# In the Missouri Court of Appeals
# Eastern District
## DIVISION TWO

| | | |
|---|---|---|
| DAUDA KOHLHEIM, | ) | No. ED102351 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable David Lee Vincent III |
| | ) | |
| Respondent. | ) | Filed: March 8, 2016 |

## I.      INTRODUCTION

Dauda Kohlheim ("Movant") appeals the judgment of the motion court denying his Rule 29.15[1] motion for post-conviction relief after an evidentiary hearing.  In his three points on appeal, Movant argues the motion court clearly erred in denying his claim that trial counsel was ineffective by 1) failing to advise Movant he could receive a fifteen-year sentence; 2) failing to object during the State's closing argument; and 3) failing to object to the trial court's sentence. We find the motion court's findings of fact and conclusions of law are not clearly erroneous and affirm.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The State charged Movant with one count of second-degree statutory rape. Movant was found to be a prior felony offender and also a felony persistent offender. The trial court conducted a jury trial.

---

[1] All rule references are to the Missouri Court Rules (2013).

The evidence presented at trial showed that the victim, R.M., who was then sixteen, had planned to spend the night with a family friend, Tashia Roberts. Ms. Roberts took victim with her to the home of Movant, Ms. Robert's boyfriend. Victim testified she fell asleep on the basement couch. While victim was sleeping, Movant came downstairs and had sexual intercourse with her. Victim called her mother, who later took her to the police station and hospital. Hospital staff administered a rape kit. Subsequent tests of victim's vaginal swabs indicated the presence of sperm. A forensic scientist tested the DNA contained in the sperm sample. The State's DNA expert testified Movant could not be excluded as a possible contributor.

During trial, the State did not call Ms. Roberts as a witness in its case-in-chief. Movant, however, did call Ms. Roberts. Movant also decided to testify. Movant was advised by the court that if he chose to testify, he would be subject to cross-examination about his prior criminal convictions. Movant indicated he understood the jury would consider his prior convictions in determining his credibility. Movant took the stand and denied sexual relations with victim. During cross-examination, Movant admitted his prior convictions.[2]

During the State's closing argument, the prosecutor reviewed the DNA evidence with the jury. The prosecutor stated that DNA testing was only done if the lab first found the presence of semen. The prosecutor added that one reason the lab first confirms the presence of semen is because the county could not afford to do DNA testing on all evidence. Movant's trial counsel did not object. During Movant's closing argument, he criticized the process for testing DNA evidence by commenting that the county could not afford to provide the accused every

---

[2] Movant admitted he pleaded guilty in 2004 to attempted robbery in the first degree and felony possession of a controlled substance. He also admitted a 1992 sentence for fraudulent use of a credit device.

opportunity to prove their innocence. In the State's rebuttal, the prosecutor clarified that if sperm was not found, the county would not attempt to convict someone, but would drop the case.

During Movant's closing argument, he addressed the State's decision not to call Ms. Roberts as a witness. Movant argued the State did not present her testimony because Ms. Roberts was not willing to tell the prosecutor what she wanted to hear. In contrast, Movant claimed the defense presented all of Ms. Robert's testimony–not just the parts favorable to Movant–so the jury would have all of the evidence in the interests of justice. In the State's rebuttal, the prosecutor responded to the Movant's allegations regarding Ms. Roberts. The prosecutor explained she did not put Ms. Roberts on the stand because she had a duty not to put someone on the stand that she thought might lie.

The jury found Movant guilty of statutory rape in the second degree. The court granted trial counsel's request for a sentencing assessment report from the Missouri division of probation and parole. Movant refused to cooperate in the preparation of the report and walked out of his interview with the probation officer. Due to Movant's lack of cooperation, the sentencing assessment report did not contain a recommendation. Prior to sentencing, the trial court noted it did not "look good" for Movant that he failed to cooperate. The court discussed the range of punishment with Movant as follows:

> COURT: The normal range of punishment for the charge against you, Mr. Kohlheim, this is a Class C felony, usually would be from one day to seven years incarceration, but I think you realized it could be enhanced up to 15 years incarceration, because of your prior and persistent background. Do you understand that?
> MOVANT: Yes.

The court sentenced Movant to fifteen years' imprisonment. Movant indicated to the court he was satisfied with the assistance given and services rendered to him by his trial counsel. On

direct appeal, this Court affirmed the judgment. *State v. Kohlheim*, 401 S.W.3d 578 (Mo. App. E.D. 2012).

Movant filed a Rule 29.15 motion for post-conviction relief, asserting three claims relevant to this appeal. Movant argued trial counsel was ineffective for: 1) failing to advise Movant of the risks of receiving a fifteen-year sentence; 2) failing to object to the State's closing argument; and, 3) failing to object to the court's sentence.

The motion court held an evidentiary hearing. Movant's trial counsel testified that he "advise[d Movant] of the risks of receiving a 15-year sentence if he went to trial." Counsel stated that because of Movant's prior record, they discussed sentencing enhancements in depth. Trial counsel maintained he had never promised Movant how much time he would serve. By telephone deposition, Movant testified he knew that as a prior and persistent felon, he could receive a maximum of fifteen years.

Movant's trial counsel further testified he discussed the "pitfalls" of Movant testifying at trial with him, including that the jury would discover Movant was a convicted felon. Counsel stated he "talked to [Movant] about his credibility" and "discussed . . . that the jury would make [the] determination as to credibility[.]" Movant testified he knew, prior to trial, that it would come down to his word against victim's word. Movant acknowledged counsel talked to him about the credibility of the victim and how that would play into the case. He then indicated he understood the Rape Shield Act limited the types of ways counsel could challenge victim's credibility. Movant conceded that "it's hard to believe a convicted felon over a teenage girl, regardless of their background, but because [he had] a prison record, the odds were against [him]."

4

With regard to the DNA evidence, trial counsel acknowledged the defense DNA expert concluded Movant could not be excluded as a possible contributor to the DNA found on victim. Counsel explained his strategy was "to attack the protocols and testing procedures" used by the State. Counsel maintained he informed Movant of this strategy. Counsel stated he gave Movant copies of the defense expert's reports regarding the DNA evidence. He testified Movant was aware of the outcome of the defense expert's findings.

The motion court denied Movant's Rule 29.15 motion. Movant now appeals.

### III. STANDARD OF REVIEW

"In reviewing the denial of relief under Rule 29.15, this Court is limited to determining whether the motion court's findings and conclusions are clearly erroneous." *Matthews v. State*, 175 S.W.3d 110, 113 (Mo. banc 2005) (citing *Smulls v. State,* 71 S.W.3d 138, 147 (Mo. banc 2002)). "The motion court's disposition will only be disturbed if, after a review of the entire record, the appellate court is left with the definite impression that a mistake has been made." *Id.*

To succeed in a post-conviction claim for ineffective assistance of counsel, a movant must demonstrate by a preponderance of the evidence that: (1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and (2) counsel's deficient performance prejudiced him. *Smith v. State*, 370 S.W.3d 883, 885 (Mo. banc 2012); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To satisfy the first prong of the *Strickland* test, a movant "must overcome a strong presumption that counsel's conduct was reasonable and effective" by pointing to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Smith*, 370 S.W.3d at 886 (quotation omitted). To satisfy

5

the prejudice prong, a movant must show that "absent the claimed errors, there is a reasonable probability that the outcome would have been different." *Id.* "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Middleton v. State*, 103 S.W.3d 726, 733 (Mo. banc 2003) (quoting *Strickland*, 466 U.S. at 694). In reviewing an ineffective assistance claim, courts are not required to consider both prongs; if a defendant fails to satisfy one prong, the court need not consider the other. *O'Neal v. State*, 766 S.W.2d 91, 92 (Mo. banc 1989).

## IV.    DISCUSSION

### A.  Point I

In his first point on appeal, Movant argues the motion court clearly erred in denying his claim that trial counsel was ineffective for failing to advise Movant he could receive a fifteen-year sentence. Movant contends that because trial counsel did not inform him of the strength of the State's evidence, he rejected the State's seven-year plea offer and went to trial. Specifically, Movant alleges counsel did not inform him that: 1) the DNA expert for the defense found Movant could not be excluded as a possible contributor to the DNA found on victim, and 2) the jury would not believe him over victim because he was a convicted felon. We disagree.

First, we find Movant was fully advised he could receive a fifteen-year sentence. At the post-conviction hearing, Movant's trial counsel testified he had discussed the State's seven-year pre-trial offer with Movant and had "advise[d] him of the risks of receiving a 15-year sentence if he went to trial." Counsel explained that due to Movant's prior record, they had discussed sentencing enhancements in depth. Trial counsel stated he never made a promise to Movant about what his actual sentence would be. Moreover, prior to sentencing and later during his

post-conviction deposition, Movant indicated he knew, as a prior and persistent felon, he could receive a maximum of fifteen years.

Further, we find the record establishes Movant was adequately advised regarding the jury's role in determining credibility and the risks of Movant testifying. At the hearing, trial counsel stated he discussed the "pitfalls" of Movant testifying at trial with him. He explained to Movant that the jury would learn he was a convicted felon if he took the stand. Counsel stated he informed Movant the jury would determine credibility. Moreover, during trial, Movant indicated to the court that he understood if he testified, the jury would learn of his prior convictions and be able to consider them in determining his credibility. Movant acknowledged it would come down to his word against victim's word. Movant testified that "it's hard to believe a convicted felon over a teenage girl, regardless of their background, but because [he had] a prison record, the odds were against [him]." Movant confirmed counsel talked to him about the credibility of the victim and how that would play into the case. He indicated he understood that the Rape Shield Act limited counsel's ability to make certain attacks on victim's credibility.

In addition, we find no merit in Movant's contention he was uninformed regarding the defense DNA expert's findings. Our review of the record shows trial counsel informed Movant about the expert's conclusions. Counsel told Movant the strategy he planned on using at trial was "to attack the protocols and testing procedures" used by the State to test DNA. Trial counsel stated he gave Movant copies of the defense expert's reports regarding the DNA evidence and Movant knew the outcome of the defense expert's findings. Here, the motion court found trial counsel's testimony credible and we must defer to its determination. *Krider v. State*, 44 S.W.3d 850, 858 (Mo. App. W.D. 2001) (stating the motion court is free to believe or disbelieve any

7

evidence, whether contradicted or undisputed, and the appellate court must defer to the motion court on matters of credibility).

Thus, the record refutes Movant's contention that trial counsel failed to advise Movant he could receive a fifteen-year sentence and did not inform Movant of the strength of the State's evidence. Accordingly, the motion court did not clearly err in denying Movant's claim. Point I is denied.

## B. Point II

In his second point on appeal, Movant argues the motion court clearly erred in denying his claim that trial counsel was ineffective for failing to object to comments made by the prosecutor during the State's closing argument. Specifically, Movant contends it was objectively unreasonable for trial counsel not to object to the prosecutor's statements that: 1) she had a duty not to put Ms. Roberts on the stand because she thought Ms. Roberts might lie; and, 2) if sperm had not been found, her office would have dropped the case. Movant maintains had trial counsel properly objected, there is a reasonable probability the jury would not have convicted Movant. We disagree.

To prevail on an ineffective assistance claim in this context, Movant must show the failure to object was not strategic, and that the failure to object was prejudicial. *State v. Clay*, 975 S.W.2d 121, 135 (Mo. banc 1998). Unless Movant proves otherwise, we presume the lack of objection was sound trial strategy. *Peterson v. State*, 149 S.W.3d 583, 586 (Mo. App. W.D. 2004). Furthermore, counsel will not be deemed ineffective for failing to make non-meritorious objections to the State's closing argument. *Id.*

Movant claims counsel should have objected to the following comment made by the prosecutor regarding the State's failure to call Ms. Roberts as a witness:

> Ms. Roberts, no, I didn't agree with what she was saying, and I didn't agree with what she was saying when we met. I have a duty not to put someone on the stand who I think might lie. That's why I didn't put her on the stand.

This comment was made in the State's rebuttal to Movant's closing argument. Movant did not object. At the post-conviction hearing, trial counsel did not testify his failure to object was strategic. Nevertheless, Movant fails to establish counsel's failure to object was ineffective and prejudicial.

Under these circumstances, we find the prosecutor's statements constituted proper retaliation for comments made during Movant's closing argument. "Generally, [a] defendant may not provoke reply by arguing outside of the record and then assert error based on the State's retaliation." *Id.* (internal quotation omitted). "The [State] therefore has considerable leeway to make retaliatory comments during closing argument, even if those comments otherwise would be improper." *Id.* (internal quotation omitted).

Here, the State did not call Ms. Roberts as a witness; Movant presented her testimony. In Movant's closing argument, he criticized the State's failure to call Ms. Roberts as follows:

> Then Tashia Roberts. Now again, you heard her testify [for the defense]. You know, [the prosecutor] has tried, if it ain't going to help me, then I'm going to kill it in the story. You know, spend an hour, two hours and a half trying to get her as a witness, you know, preparing her, and then decide, well, you may not be able to tell me what I want to hear, so I'm going to leave you out.
> Again, was Ms. Roberts brought in in the state's case? No. But we made sure. We wanted you to have all of the evidence before you deliberate, all of it. Not just some of it. Not just part of it. Not just that part that benefits our case, but all of the evidence, because that's how justice is done.

The prosecutor's rebuttal comments constituted retaliation for Movant's remarks. Movant suggests the State did not call Ms. Roberts as a witness because Ms. Roberts would not tell the prosecutor what the prosecutor wanted to hear. Counsel then implied the State was trying to prevent the jury from hearing all the evidence and was not acting in the interests of justice. The

State was entitled to respond to Movant's allegations by explaining why the State chose not to present Ms. Robert's testimony. Movant cannot now assert error when his assertions provoked the State's reply and gave the prosecutor "leeway" to make retaliatory comments in rebuttal. Accordingly, Movant's trial counsel did not render deficient performance for failing to make an objection that would have been overruled.

Movant also complains trial counsel should have objected to comments made by the prosecutor regarding the testing of the DNA evidence. During the State's closing argument, the prosecutor stated:

> Do you remember the phrase acid phosphatase? That's the first test to see if it might be semen. That's not confirmatory. The lab shows an abundance of caution. They don't just say, oh, it might be semen, let's forward it to DNA. No. Why? Because one, the county can't afford it. They have got to make sure there is semen there before it gets sent to DNA.

Then Movant remarked during closing argument:

> [The prosecutor] tells you about the county can't afford it. Can't afford what? Can't afford to buy an individual who was accused with every possible way of trying to prove whether they're guilty or innocent. When is guilt and innocent decided by a cost?. . .
> The fact is, a person sitting here, when is cost a factor in determining justice? How much -- how much is it worth? How much is justice worth? The county can't afford it.

In the State's rebuttal argument, the prosecutor responded:

> I didn't say the county can't afford to exonerate people. Actually, what I said was the opposite. It's that if sperm isn't found, the county isn't going to go to any extra expense of trying to convict someone on the lack of sperm. They're going to drop it. We're going to drop it.

Movant did not object.

Now, Movant asserts counsel's failure to object was ineffective assistance. However, Movant does not explain on appeal how the State's comments were improper. Movant makes the conclusory claims that the prosecutor argued facts not in evidence, improperly personalized

10

her argument to the jury, degraded the defense counsel, and argued special knowledge about the case. However, he fails to show how any of these allegations apply to the prosecutor's specific comments about the process for testing DNA. Under Rule 84.04, "[t]he points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." Rule 84.04(d). Movant's sub-point fails to comply with Rule 84.04(d) as it fails to state the legal reason for the claim or explain why, in the context of the case, the legal reason supports the claim. *State v. Gaines,* 316 S.W.3d 440, 447 (Mo. App. W.D. 2010). Movant's failure to comply with the requirements of Rule 84.04 is a sufficient basis to dismiss his appeal. *Id.* However, we offer our analysis *ex gratia.*

We find that trial counsel did not render ineffective assistance by failing to object. Any objection raised by trial counsel would have been overruled. Movant argued that the county could not afford to do justice and implied Movant was being prevented from establishing his innocence. The prosecutor, therefore, was entitled to explain that cost was not preventing Movant from being exonerated. *Peterson*, 149 S.W.3d at, 586. Rather, if semen was not present, the county would not attempt to convict someone, but would drop the case, sparing the county from the unnecessary, extra expense of DNA testing. Thus, had trial counsel objected, the objection would have been overruled. Counsel cannot be deemed ineffective for failing to make a non-meritorious objection. *Id.*

Furthermore, even if Movant had established counsel was ineffective for failing to object, to prevail on his claim, Movant would still be required to prove trial counsel's failures to object were prejudicial. Under the second prong of *Strickland*, a movant must show that "absent the claimed errors, there is a reasonable probability that the outcome would have been different." *Smith*, 370 S.W.3d at 886. Here, Movant does not meet his burden to show how the prosecutor's

11

comments during closing argument had any decisive effect on the outcome. The record establishes the evidence presented against Movant was overwhelming. The teenage victim testified against Movant and identified him as the person who had sexual intercourse with her. In addition, expert testimony concluded that Movant could not be excluded as a contributor to the semen sample on swabs taken from the victim's vagina.

Accordingly, we find Movant fails to establish trial counsel was ineffective and that he was prejudiced as a result. The motion court did not clearly err in denying Movant's claim. Point II is denied.

## C. Point III

In his third point on appeal, Movant contends the motion court clearly erred in denying his claim that trial counsel was ineffective for failing to object to the sentence imposed by the trial court. Movant asserts his sentence was excessive and the trial court improperly relied on the fact that Movant did not show remorse and exercised his right to trial. Movant maintains that had trial counsel objected, there is a reasonable probability Movant would have received a more lenient sentence. We disagree.

The trial court has a duty to impose a sentence on a case-by-case basis, and to fashion the punishment to both the crime and the criminal. *State v. Collins*, 290 S.W.3d 736, 746 (Mo. App. E.D. 2009). Here, Movant contends trial counsel should have objected because his sentence was excessive. However, we disagree as Movant's sentence of fifteen years was within the range of punishment for statutory rape in the second degree for a prior and persistent felony offender. *See* § 558.011.1(2) RSMo Supp. 2008; § 558.016.7(3) RSMo Supp. 2008; § 566.034.2 RSMo 2000. "'[W]hen punishment imposed is within the range prescribed by statute, it cannot be judged

excessive by the appellate court[.]"" *State v. Hooper*, 842 S.W.2d 889, 890 (Mo. App. S.D. 1992) (quoting *State v. Repp,* 603 S.W.2d 569, 571 (Mo. banc 1980)).

Movant further claims trial counsel should have objected to his sentence because the trial court relied on improper considerations. First, Movant alleges the court improperly imposed a fifteen-year sentence based on Movant exercising his right to a trial. The trial court, due to its experience and expertise, is presumed to consider appropriate sentencing factors and to disregard improper matters. *Morse v. State*, 462 S.W.3d 907, 913 (Mo. App. E.D. 2015). As such, the trial court exercises very broad discretion in its sentencing function. *Id.* Despite that discretion, it is well-established that a court may not use the sentencing process to punish a defendant, notwithstanding his guilt, for exercising his right to receive a full and fair trial. *Id.* A defendant may not be subjected to more severe punishment simply because he exercised his right to stand trial. *Id.* (citing *Thurston v. State,* 791 S.W.2d 893, 896 (Mo. App. E.D.1990)).

In order to be entitled to relief on a claim of retaliatory sentencing, a movant must show that his exercise of his right to proceed to trial was an actual, "determinative factor" considered by the trial court in making its sentencing decision. *See Morse*, 462 S.W.3d at 913. A factual allegation must be made connecting the trial court's conduct, such as comments made by the trial court at sentencing, to retaliation. *Taylor v. State,* 392 S.W.3d 477, 487 (Mo. App. W.D. 2012). In order to satisfy the determinative factor test, "something beyond the bare possibility that retaliation *could* have been a factor in sentencing must be shown." *Id.*

Here, Movant alleged no facts showing that retaliation was even a factor in the court's sentencing decision, much less a determinative factor. Movant made no allegations that the trial court made statements referencing Movant's decision to proceed to trial, or connecting his exercise of that right to the sentence imposed. Instead, Movant now makes a conclusory

allegation of retaliation which infers retaliatory intent based on the length of the sentence imposed by the trial court. The mere existence of a longer-than-expected sentence, without more, does not constitute a sufficient factual basis warranting relief on a claim of retaliatory sentencing. *See Morse*, 462 S.W.3d at 914.[3]

Secondly, Movant asserts the trial court improperly relied on the fact that Movant did not show remorse. At the sentencing hearing, the trial court noted it would consider whether or not there was remorse in this case; the court further concluded there was no remorse. Movant argues the court's consideration of his lack of remorse was improper because it was based upon Movant's assertion of his innocence and exercise of his right to go to trial. We find no evidence to support this conclusion. In fact, the court made no mention of Movant's rejection of the plea bargain or Movant's insistence on a jury trial. Instead, the court explained it considered Movant's lack of remorse in light of the overwhelming evidence of Movant's guilt presented at trial.

We do not find the court's consideration of Movant's lack of remorse improper. While it is fundamental that a trial court cannot punish a defendant more harshly for exercising his right to plead not guilty, a trial court may, however, take into account the character of the defendant, including the defendant's attitude concerning the offense. *State v. Collins*, 290 S.W.3d 736, 746 (Mo. App. E.D. 2009). A defendant's apparent lack of remorse and failure to take appropriate responsibility for his actions are both appropriate considerations when considering sentencing. *Id.* at 747.

---

[3] While the sentence imposed by the trial court was significantly longer than the pre-trial plea offer, the trial court was bound by neither in making its sentencing decision. *Morse*, 462 S.W.3d at 915 n.3.

Moreover, based upon our review of the record, it is clear that the trial court also evaluated other factors in determining Movant's sentence. At the sentencing hearing, the court stated it looked strictly at the evidence, and then described the evidence against Movant presented at trial. The court also remarked it had agreed to consider Movant's sentencing assessment report. However, the court explained that the report did not contain a recommendation because Movant walked out of his interview. The court noted Movant's failure to cooperate did not "look good." As noted above, the trial court was entitled to consider Movant's attitude concerning the offense. Finally, we note immediately before sentencing Movant, the trial court reminded him his sentence could be enhanced up to 15 years because of his prior and persistent background.

Here, the trial court properly exercised its discretion in imposing Movant's sentence and any objection by Movant would have lacked merit and been overruled. Trial counsel cannot be deemed ineffective for failing to make a non-meritorious objection. *See Worthington v. State*, 166 S.W.3d 566, 581 (Mo. banc 2005). The motion court did not clearly err in denying Movant's claim. Point III is denied.

## V. CONCLUSION

We affirm the judgment of the trial court.

_____
Angela T. Quigless, Judge

Philip M. Hess, P.J., and
Gary M. Gaertner, Jr. J., Concurs

15