STATE of Missouri, Respondent,

v.

Brett M. MAGEE, Appellant.

No. WD 49875.

Missouri Court of Appeals,
Western District.

Dec. 5, 1995.

Robert G. Duncan, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Kocot, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, P.J., and BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Brett M. Magee was convicted of four counts of burglary in the second degree, § 569.170, RSMo 1994,[1] and four counts of stealing over $150.00, § 570.030. He was sentenced as a persistent offender to eight concurrent twenty-year terms of imprisonment. Mr. Magee now appeals, claiming that there was insufficient evidence to support the convictions, that the trial court erred by refusing to grant him a new trial on the basis of newly discovered evidence, and that the trial court erred by sentencing him as a persistent offender. The convictions are affirmed, but the cause is remanded for resentencing.

This case arises from burglaries and thefts which took place at the Motter Building, an office complex located at 851 N.W. 45th Street in Gladstone, Missouri. At the time that the crimes occurred, the tenants of the Motter Building included Northland Cardiology, the Pulmonary Medicine Association, Corporate Personnel and Associates, and two attorneys, Ronald C. Thiewes and Ann Robards.

On January 4, 1993, Mr. Thiewes, Ms. Robards, and employees of the other aforementioned tenants noticed that the doors to these businesses had been pried open, and that money and other items had been taken. Northland Cardiology was missing $70.00 from a cash box, a mini-cassette recorder, an optiscope, and an otoscope. The total value of these articles was $617.00. A fax machine with an estimated value of between $500.00 and $600.00 had been taken from the Pulmonary Medicine Association. Corporate Personnel and Associates was missing two corporate checkbooks, a small television set, and some other items. The total value of these articles was estimated to be between $300.00 and $700.00. A fax machine with an estimated value of $800.00, an answering machine with an estimated value of $39.00 to $49.00, and a beeper had been taken from Mr. Thiewes' office. Ms. Robards was missing items from a lockbox which contained the personal belongings of a client. The items

taken from the lockbox included a wallet, credit cards, cash, and a checkbook.

In addition, the investigating police officers discovered that someone with a prying tool had tampered with both a Coke machine and a candy machine in the building. The officers also found pieces of rubber gloves scattered in the hallways and inside the burglarized offices. None of the property stolen in the burglaries was ever recovered.

Mr. Magee was arrested and charged with the crimes in an eight-count information. Counts I and II pertained to the burglary and the theft, respectively, at Corporate Personnel and Associates; Counts III and IV to the burglary and theft, respectively, at Northland Cardiology; Counts V and VI to the burglary and theft, respectively, at the office space shared by the attorneys; Counts VII and VIII to the burglary and theft, respectively, at the Pulmonary Medicine Association.

Donnie Burlington, a long-time acquaintance of Mr. Magee's, testified at the trial. On direct examination, the prosecutor questioned Mr. Burlington as follows:

Q. Have you ever had a conversation with Brett Magee about him being involved in burglaries and stealings at an office complex in Claymont?

A. Yes.

Q. Did Brett Magee tell you that he was involved in burglaries and stealings?

A. Yes.

Mr. Burlington proceeded to recount that, several days after the burglaries occurred, Mr. Magee and Jimmy Tuggle came over to Mr. Burlington's house and showed him certain items in their possession. Mr. Burlington testified that they showed him "[a] couple fax machines, liquid valium" and "doctor tools." In addition, Mr. Magee made another trip to Mr. Burlington's house at around the same time and showed Mr. Burlington "a wad of money" and car stereo equipment which Mr. Magee had just purchased for Andrea Moore, who was Mr. Magee's girl-

**1.** All statutory references are to the Revised Statutes of Missouri 1994, unless otherwise

indicated.

friend at the time. The prosecutor then questioned Mr. Burlington as follows:

Q. When Mr. Magee talked to you about the burglaries, did he tell you he got into the—

A. Yes.

Q. How did they get into the office?

A. Jimmy is the first one that told me how they got in.

Q. Was Brett Magee there when Jimmy Tuggle told you?

A. No, not when Jimmy told me how they got in.

Q. What did Brett Magee tell you about it?

A. He didn't ever tell me how he got in. He just told me where he got all the stuff from.

Q. Where did he get the stuff from?

A. The office buildings there off—I don't know the road, Vivion Road?

Q. Did Magee tell you how many offices he was in?

A. He said approximately ten.

Q. What about vending machines?

A. Jimmy told me that they had broke into a candy machine or a coke machine.

Mr. Burlington further testified that, in a verbal statement which he gave to Detective Brent Whittlesey on January 25, 1993, he related that Jimmy Tuggle had shown him three duffle bags full of stolen property which included "liquid valium, answering machines, fax machines, pagers, doctor's tools, payroll checks, blank personal checks."

Andrea Moore also testified at the trial. She stated that Mr. Magee borrowed her car on January 4, 1993 and had stereo equipment installed in the vehicle before returning it. Ms. Moore testified that, when she asked Mr. Magee how he had acquired the money to pay for the stereo equipment, "[h]e told me his mother cleans office buildings in Claymont and he told me that him and Jimmy Tuggle had broke into the buildings and he took the money from the building." According to Ms. Moore, Mr. Magee told her that on the night of January 3, 1993, after his mother had gone to sleep, he and Mr. Tuggle took her car and burglarized the office building.

Ms. Moore also testified that Mr. Magee told her that he had taken a crowbar with the intention of using it to gain entry, that he had worn rubber gloves to avoid leaving fingerprints, and that the rubber gloves had broken while he was burglarizing the offices. When the prosecutor asked Ms. Moore if Mr. Magee had mentioned any items taken from the offices, Ms. Moore stated: "He had told me that they stole office equipment and money and liquid valium."

At the conclusion of the trial, a jury found Mr. Magee guilty on all counts. Along with Mr. Magee's motion for a new trial, he filed a Rule 29.13 motion seeking relief on the basis of newly-discovered evidence. The motion was overruled by the trial court after a hearing.

In his first point on appeal, Mr. Magee claims that there was insufficient evidence to support the convictions in this case. In particular, Mr. Magee argues that, while evidence tended to prove that Mr. Magee was involved in some kind of burglary and that he stole certain items, it did not sufficiently establish that he was involved in the particular burglaries and thefts that took place at the Motter Building.

In support of his contention, Mr. Magee refers to the fact that, while Mr. Burlington and Ms. Moore referred to Mr. Magee's involvement in criminal activity at "an office building in Claymont," or "an office building off Vivion Road," they never made any reference to the Motter Building or to the Motter Building's specific address. In addition, Mr. Magee notes that Mr. Burlington and Ms. Moore both referred to a theft of liquid valium in their accounts of Mr. Magee's burglaries, while none of the victimized tenants in the Motter Building reported the loss of such an item.

In reviewing a challenge to the sufficiency of the evidence, this court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc

1989). In such a review, the role of this court is not to weigh the evidence, but to determine whether there was sufficient evidence from which reasonable jurors could have found the defendant guilty. *State v. Weide*, 812 S.W.2d 866, 869 (Mo.App.1991).

▬ There was sufficient evidence from which reasonable jurors could have found that Mr. Magee burglarized and stole from the four tenants in the Motter Building. Mr. Magee's mother testified that one of the buildings at which she performed cleaning services was the Motter Building. Ms. Moore testified that Mr. Magee had admitted to her that he had committed burglary and theft at a building that his mother cleaned, and that his criminal acts took place on January 3, 1993, which was the night before people employed in the Motter Building returned to work to find their offices had been pried open and items and money were missing. Ms. Moore also testified that Mr. Magee mentioned wearing rubber gloves which broke during the incident. Police officers who investigated the scene of the crimes at the Motter Building testified that they found pieces of rubber gloves in the offices and hallways. Ms. Magee further testified that Mr. Magee mentioned taking a crowbar to gain entry, and police found that a prying tool had been used at the scene.

In addition, Mr. Burlington testified that Mr. Magee had told him that he and Mr. Tuggle had broken into a Coke machine or a candy machine during the incident. Police officers who investigated the Motter Building testified that a prying tool had been used to tamper with a Coke machine and a candy machine there. Mr. Burlington also told Detective Whittlesey that Mr. Tuggle had showed him stolen items which generally match the items reported taken from the Motter Building. This is sufficient testimony from which jurors could reasonably infer that Mr. Magee's criminal activity took place at the Motter Building. Point denied.

In his second point on appeal, Mr. Magee claims that the trial court abused its discretion by refusing to grant him a new trial on the basis of newly discovered evidence. The newly discovered evidence is alleged to be the testimony of Jimmy Tuggle that he acted alone in the burglaries and thefts at the Motter Building. Like Mr. Magee, Mr. Tuggle was charged with the crimes committed at the Motter Building.

Mr. Magee presented his claim of newly discovered evidence in a post-trial motion that was denominated a "Motion to Set Aside Judgment" pursuant to Rule 29.13. Mr. Magee's motion alleged that, on May 5, 1994, more than two weeks after the jury reached its verdicts in the Magee case, Mr. Tuggle pleaded guilty to two of the eight counts against him, and, in so doing, Mr. Tuggle stated that he had acted alone in committing the crimes. The motion also alleged that, after the verdicts in the Magee case, Mr. Tuggle contacted Mr. Magee's trial counsel and informed him that he had acted alone.

▬ The remedy of setting aside a judgment is only available under Rule 29.13 on one of two grounds: (1) that the facts stated in the indictment or information do not constitute an offense; or (2) that the court is without jurisdiction of the offense charged. Rule 29.13(a). A claim of newly-discovered evidence does not fall under either of these two categories. Therefore, Mr. Magee failed to state a claim for relief under Rule 29.13(a).

▬ Mr. Magee's claim for relief on the basis of newly-discovered evidence would be cognizable under subsection (b) of Rule 29.13, however, which allows the trial court to order a new trial on its own initiative. The trial court has authority to act on its own initiative in granting a new trial "before the entry of judgment and imposition of sentence but not later than thirty days after the verdict of the jury is returned." Rule 29.13(b). *See also State v. Coffman*, 647 S.W.2d 849, 851 (Mo. App.1983).

▬ The trial court did not act to grant a new trial within thirty days after the verdict. Consequently, by the terms of Rule 29.13(b), the trial court was without jurisdiction to order the remedy of a new trial at the time of the hearing on Mr. Magee's 29.13 motion. Since Mr. Magee's motion does not state a claim for relief under 29.13(a) and the court had no jurisdiction to act under 29.13(b), Mr. Magee's assertion that the trial

court abused its discretion when it denied his motion is not preserved for review. Any claim that Mr. Magee is entitled to a new trial on the basis of newly discovered evidence will be reviewed for plain error only.

The plain error rule places a much greater burden on a defendant than when he asserts a preserved claim of prejudicial error. *State v. Young*, 889 S.W.2d 102, 104 (Mo.App. 1994). Under the plain error rule, relief may be granted only when an error so substantially affected the rights of a defendant that manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *State v. Howton*, 890 S.W.2d 740, 746 (Mo. App.1995).

"New trials on the basis of newly discovered evidence are not favored, and the trial court is vested with substantial discretion in deciding whether such should be granted." *State v. Amrine*, 741 S.W.2d 665, 674 (Mo. banc 1987). To be entitled to a new trial on the basis of newly discovered evidence, a defendant must demonstrate: "(1) the facts constituting the newly discovered evidence have come to the movant's knowledge after the end of the trial; (2) movant's lack of prior knowledge is not owing to any want of due diligence on his part; (3) the evidence is so material that it is likely to produce a different result at a new trial, and (4) the evidence is neither cumulative nor merely of an impeaching nature." *State v. Roe*, 845 S.W.2d 601, 606 (Mo.App.1992).

"Testimony from a co-defendant who, after trial, is willing to exonerate the defendant is usually not considered newly discovered evidence." *State v. Hamilton*, 732 S.W.2d 553, 556 (Mo.App.1987). Typically in such cases, the co-defendant has previously invoked his Fifth Amendment privilege to not testify on the defendant's behalf. Then, after the co-defendant's own conviction, he indicates some willingness to testify for the defendant seeking a new trial. Courts have consistently denied relief in these circumstances because the co-defendant's testimony is considered to be merely "newly available" instead of "newly discovered." *Id.*

This distinction was explained by this court in *Hamilton:*

The evidence which could be gleaned from the co-defendant's testimony always existed, and the defendant was aware of its existence. The co-defendant's evidence was previously not available. With the co-defendant's new willingness to testify, his evidence becomes "newly available," but "newly available evidence" is not "synonymous with 'newly-discovered evidence.'"

*Id.* (quoting *United States v. Metz*, 652 F.2d 478, 479–81 (5th Cir.1981)). In the case at bar, Mr. Magee and Mr. Tuggle are not technically "co-defendants" because they were not charged in the same indictment. They were, however, charged with identical crimes resulting from the burglaries and thefts at the Motter Building, and therefore their relationship is functionally equivalent to that of co-defendants for the purpose of this analysis. *United States v. Carlin*, 573 F.Supp. 44, 47 n. 3 (N.D.Ga.1983).

Mr. Tuggle's proposed testimony is merely newly available evidence instead of newly discovered evidence. Any testimony which Mr. Tuggle might offer about his own responsibility for the crimes would be newly discovered evidence only if Mr. Magee first had knowledge of it "after the end of the trial." *Roe*, 845 S.W.2d at 606. Mr. Magee claims that he did not know for *certain* that Mr. Tuggle was involved in the crimes with which Mr. Magee had been charged, until after his trial. Although Mr. Tuggle's phone call after trial removed all doubts about his involvement, before "the end of the trial" there was ample testimony from both Mr. Burlington and Ms. Moore that Mr. Tuggle was integrally involved in the crimes.

Furthermore, a new trial on the basis of newly discovered evidence should be granted only when that evidence is credible enough that it would have probably produced a different result. *State v. Thompson*, 610 S.W.2d 629, 633 (Mo.1981). The alleged evidence of Mr. Tuggle does not meet this test. Testimony from a co-defendant who, after trial, is willing to exonerate the defendant has an inherent lack of credibility. *Hamilton*, 732 S.W.2d at 556 n. 3. At the time that the co-defendant signifies his willingness to

testify, he has been convicted and thus cannot be harmed by testifying untruthfully about the alleged innocence of the defendant seeking a new trial. *Id.* Such is the case here. Point denied.

In his third point on appeal, Mr. Magee claims that the trial court erred in finding him to be a persistent offender because the finding was based, in part, upon a guilty plea that was entered after the date upon which the present offenses were committed. The State, in its brief, concedes that the trial court erred in this respect.

Section 558.016 authorizes a trial court to impose an extended term of imprisonment for any defendant who is found to be a "persistent offender." A persistent offender is defined in § 558.016.3 as a person "who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." By contrast, § 558.016.2 defines a "prior offender" as a person "who has pleaded guilty to or has been found guilty of one felony." Section 558.016.6 further provides that the guilty pleas relied upon as the basis for prior or persistent offender status "shall be prior to the date of commission of the present offense."

In the case at bar, the trial court found Mr. Magee to be a persistent offender based upon (1) his pleading guilty on December 3, 1992 to the class C felonies of burglary in the second degree and stealing over $150.00, and (2) his pleading guilty on January 7, 1993 to an additional class C felony of burglary in the second degree. Indisputably, the January 7, 1993 guilty plea was after the date of the commission of the present offenses.

Because only one of Mr. Magee's guilty pleas was entered before the commission of the present offense, the trial court erred by sentencing him as a persistent offender instead of as a prior offender. When a defendant is incorrectly sentenced as a persistent offender when the correct repeat offender status is as a prior offender, the remedy is to remand to allow for any necessary amendment of the information and for the defendant to be resentenced. *State v. Hill,* 865 S.W.2d 702, 706 (Mo.App.1993).

Mr. Magee's convictions are affirmed. The imposition of sentence is reversed and the cause is remanded for the purpose of resentencing.

All concur.