

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99793 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | |
| | ) | |
| JUSTIN A. LEWIS, | ) | Honorable Mark Seigel |
| | ) | |
| Defendant/Appellant. | ) | Filed: May 13, 2014 |

## Introduction

Justin A. Lewis (Appellant) appeals from the trial court's judgment entered upon a jury verdict finding him guilty of second-degree felony murder, unlawful use of a weapon (UUW), and two counts of armed criminal action (ACA) and sentence entered upon the jury's recommended sentences for a total of 49 years' imprisonment. We affirm.

## Factual and Procedural Background

During the early morning hours of June 26, 2010, Dorian Thomas (Dorian), whose nickname was "Boy," was driving his gold Cadillac with his 17-year-old girlfriend Deja Chappell (Chappell) in the front passenger seat on Lurch Avenue in Kinloch. Chappell testified at trial that as Dorian was parking the Cadillac, a Jeep Cherokee passed them. Chappell was talking to her sister's cousin from the window of the Cadillac when she saw headlights coming from behind them, heard five gunshots as the Cherokee

passed by, and saw the Cherokee driving off. She turned to Dorian who was slumped over and unconscious. She got out of the car and ran around to the driver's side, opened the door, and lifted Dorian's dreadlocks from his face. She saw blood all over her hands. Chappell called the police from Dorian's cell phone. Police and an ambulance responded to the scene. Chappell went with police to try to find the Jeep Cherokee, which they found parked on Wolf Street. Chappell identified the Cherokee but was not able to identify anyone who had been in it that night.

Dorian died from a gunshot wound to the head. Detective Ben Kloos (Detective Kloos) investigated Dorian's homicide. On July 2, 2010, Detective Kloos interviewed 15-year-old Marquis McKinney (McKinney) at the police station.[1] During the interview, which was recorded, McKinney told Detective Kloos that on the night of the incident he had been at a party off of Bermuda Drive. Somebody had shot at the people at the party. McKinney said he, Kevin McDavis (McDavis), nicknamed "Little Kevin," and Appellant, known as "Little Red," left the party at that point in a stolen white Jeep Cherokee. These three were members of the gang known as the "Hood Squad." Appellant was driving, McDavis was in the front passenger seat and McKinney was in the back. The three of them drove to Kinloch looking for anyone the gang was "into it with," which included Darian Thomas (Darian), who was Dorian's twin brother. Darian's nickname was "Bit."[2] McKinney said as they were driving down Lurch Avenue in Kinloch, they saw a person whom they thought was Darian attempting to parallel park a gold Cadillac. McKinney said McDavis told Appellant to make a U-turn after they

---

[1] One of the members of the gang to which the perpetrators in this case belonged identified Appellant and Kevin McDavis as being involved in Dorian's shooting. After McDavis was arrested on July 2, 2010, he gave up McKinney as being involved.
[2] Appellant had shot at "Bit" and other occupants of his car in an incident several weeks prior to this night.

passed the gold Cadillac and to "get up on Bit." McKinney told Detective Kloos that after Appellant made the U-turn, they drove by the Cadillac, and McDavis shot four or five shots out of the front passenger window of the Cherokee into the Cadillac.

McKinney related that the three fled the scene in the Cherokee and abandoned it at the intersection of Wolf and Shillington. At the intersection, McKinney said he saw McDavis empty a revolver and dispose of the spent shell casings. McKinney told Detective Kloos he had not known McDavis had the gun until after they made the U-turn and McDavis said "get up on Bit." McDavis then left on foot and McKinney and Appellant got a ride from someone.

The police could not locate the spent shell casings where McKinney said McDavis had disposed of them. They processed the Cherokee for fingerprints and found three prints belonging to McDavis.

McKinney was shot in the head on April 30, 2011, and claims he has short-term memory loss as a result. At trial, he testified he did not know Appellant or McDavis, did not remember any of the things he said to Detective Kloos or recall any of the events of June 26, 2010 that he recounted to Detective Kloos. McKinney stated he did not remember talking to Detective Kloos, being shot in 2011, undergoing surgery or even what he did the day before.

Officer John Krebs (Officer Krebs) testified that at about 11:00 a.m. on July 13, 2010, he and three other officers were directed to go to an apartment in Ferguson to arrest Appellant for the homicide. They had been given a photograph of Appellant by detectives. Officer Krebs and Officer McGee knocked on the front door of the apartment. Appellant answered the door. Officer Krebs asked Appellant to identify himself, which

3

he did.  Officer Krebs advised Appellant he was under arrest and of his Miranda[3] rights. Appellant indicated he understood his rights and then said, "I know why you are here." In the photograph, Appellant had dreadlocks.  At the time of his arrest at the apartment, Appellant's hair was cut short.  Officer Krebs asked Appellant if he had recently cut his hair.  Appellant responded he had cut it about a week ago.

Because Appellant was 16 years old when he was arrested, he was taken to the juvenile division of circuit court, which certified him to be tried as an adult in a court of general jurisdiction.  In circuit court, the State charged Appellant with one count of UUW for discharging a firearm from a vehicle resulting in another person's death (Count I), second-degree felony murder (Count III), and two counts of ACA (Counts II and IV).

Prior to trial, Appellant filed a motion to suppress the statements he made when he was arrested at his home on July 13, 2010, because neither a parent nor a juvenile officer had been present and Officer Krebs had asked a guilt-seeking question.  The trial court overruled the motion.  A jury trial began on February 19, 2013.  Appellant renewed his motion to suppress when Officer Krebs took the stand to testify.  The trial court again overruled the motion.

After a four-day trial, concluding on February 22, 2013, Appellant moved for judgment of acquittal at the close of the evidence, which the trial court denied.  The jury found Appellant guilty as charged, and after a penalty phase, recommended a sentence of 22 years on the murder charge; 10 years on each of the ACA charges; and 17 years on the UUW charge.  The trial court entered sentence accordingly, with all sentences to run

---

[3]Miranda warnings must be provided when a person is subjected to custodial interrogation.  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 16 L.Ed.2d 694 (1966).

4

consecutively to each other except for the 10-year sentence on the Count II ACA charge which was to run concurrently to the other sentences, for a total of 49 years' imprisonment.

Appellant filed a motion for new trial, which included allegations of error in the denial of his motion to suppress the statements he made upon arrest and the denial of his motion for judgment of acquittal at the close of evidence. The trial court denied the motion for new trial. This appeal follows. Appellant presents three points on appeal.

In his first two points, Appellant claims the trial court erred in overruling his motion for judgment of acquittal at the close of evidence because the State did not prove beyond a reasonable doubt his guilt as an accomplice because McKinney's statements constituted insufficient evidence he aided or encouraged McDavis in shooting Dorian and without those statements there was no evidence he drove the vehicle or knew McDavis had a gun.

This Court reviews the denial of a motion for acquittal to determine if the state adduced sufficient evidence to make a submissible case. State v. Sistrunk, 414 S.W.3d 592, 596 (Mo.App. E.D. 2013). We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense. Id. In so reviewing, this Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn therefrom, whereas all contrary evidence and inferences are disregarded. Id. We do not weigh the evidence, but rather merely determine whether there was sufficient proof, including any incriminating evidence

5

developed during the defendant's case, from which the trial court could reasonably have found the defendant guilty. Id.

Appellant's convictions were based on accomplice liability. "The law of accessory liability emanates from statute, as construed by the courts." State v. Barnum, 14 S.W.3d 587, 590 (Mo.banc 2000). Although Missouri at one time made a distinction between principals and accessories to crime, Missouri has since eliminated such a distinction with respect to accomplice liability; therefore, all persons who act in concert to commit a crime are equally guilty. Sistrunk, 414 S.W.3d at 596-97.

Section 562.041.1(2)[4] provides that a person is criminally responsible for the conduct of another when "[e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Accordingly, "[t]o make a submissible case of accomplice liability, the State must show that the defendant associated himself with the venture or participated in the crime in some manner, but the State need not show that the defendant personally committed every element of the crime." State v. Young, 369 S.W.3d 52, 55 (Mo.App. E.D. 2012). Any evidence, either direct or circumstantial, demonstrating affirmative participation in the crime charged and committed is sufficient to support a conviction. Sistrunk, 414 S.W.3d at 597.

McKinney's statements were legally sufficient to connect Appellant to the crime. Officer Kloos testified McKinney told him that on the night in question, Appellant was driving him and McDavis around; they left a party where there had been a shooting to look for "anyone they were into it with," including Dorian's twin brother Bit; and when

---

[4] All statutory references are to RSMo 2006, unless otherwise indicated.

6

they saw a car they thought Bit was in, which was actually being driven by Dorian, McDavis instructed Appellant to make a U-turn and to "get up on Bit." Appellant did. At that point McDavis fired four to five shots into Dorian's car, killing him. Appellant then fled the scene and abandoned the Cherokee.

Appellant maintains these statements do not prove he purposefully aided or encouraged McDavis in shooting Dorian. Appellant also claims these are uncorroborated prior inconsistent statements because McKinney recanted at trial. We disagree.

First, a prior inconsistent statement can be the sole basis for a guilty verdict. State v. Garner, 14 S.W.3d 67, 72 (Mo.App. E.D. 1999). The so-called "exception" to this rule set out in State v. Pierce, 906 S.W.2d 729 (Mo.App. W.D. 1995) espoused by Appellant is limited in that it pertains to the testimony of a victim in a sexual assault case and requires corroboration where the victim's trial testimony is so inherently contradictory and unbelievable as to "cloud the mind with doubt." See State v. Mason, 95 S.W.3d 206, 209-10 (Mo.App. S.D. 2003). Such is not the case here. Its use is also growing increasingly disfavored beyond its limited application such as to the specific facts at issue in Pierce. See Mason, 95 S.W.3d at 210; State v. Wadel, 398 S.W.3d 68, 82 (Mo.App. W.D. 2013). As such, it is not applicable here.

In any event, McKinney did not "recant" his statements when placed on the stand to testify, but merely stated he could not remember anything about the events of that night or talking to Officer Kloos or even what he had done the day before. Further, his statements about particular facts were corroborated by other evidence such as the location of the shooting (Kinloch); the identity of the victim (Dorian); the vehicle the victim was driving (gold Cadillac); the vehicle McKinney, McDavis and Appellant were in (stolen

7

white Jeep Cherokee); how Appellant with McKinney and McDavis drove past the Cadillac, made a U-turn at McDavis's request, came back past as McDavis fired four or five shots into the gold Cadillac at Dorian, sped away and abandoned the Cherokee at the intersection of Wolf and Shillington streets.

In addition to McKinney's statements, Appellant's actions before, during, and after the crime demonstrated he knew McDavis was going to shoot at someone and intended to participate in that shooting. After being shot at, the three decided to go looking for their enemies. Clearly, retribution was the motive for this hunt, which was confirmed after they spotted Dorian, whom they mistakenly thought was their enemy Bit and whom Appellant had shot at in a drive-by in the recent past. McDavis's direction to Appellant to make a U-turn and "get up on Bit" was a clear indication he was going to shoot at him, which he indeed did. Afterward, the three fled the scene. At no time did Appellant attempt to help Dorian or hinder the shooting itself. Because McKinney stated he knew that McDavis had the gun when he saw it after the U-turn and when he stated he wanted to "get up on Bit," it can be inferred that Appellant also knew. The evidence and reasonable inferences therefrom indicate Appellant knew the plan before, during, and after. As such, there was sufficient evidence from which the jury could reasonably find Appellant guilty as an accomplice to the crimes committed that night.

For the foregoing reasons, Appellant's Points I and II are denied.

## Point III

In his third point, Appellant contends the trial court erred in overruling his motion to suppress his affirmative reply to Officer Krebs's question if he had recently cut his hair. Appellant claims the trial court's decision not to suppress the statement or to grant a

8

new trial because of the statement's admission violated his privilege against self-incrimination and rights to due process and counsel, in that although Krebs advised him of his Miranda rights before he asked him the question, he did not advise him that he had the right to have a parent, guardian or custodian present during questioning as required by Section 211.059.

We review a trial court's decision to grant or deny a motion to suppress to determine if there was substantial evidence to support the decision, and will only reverse if the trial court's ruling was clearly erroneous. State v. Nylon, 311 S.W.3d 869, 884 (Mo.App. E.D. 2010). Clear-error review requires that the moving party properly preserved the trial court error below. Id. To properly preserve an objection for appeal, the moving party must make a specific objection at trial asserting the same grounds raised on appeal. State v. Moore, 303 S.W.3d 515, 522-23 (Mo.banc 2010).

Appellant's motion to suppress did not present the same reason he argues now on appeal that his statement about his recent haircut should have been suppressed. First, his motion to suppress was a boilerplate motion. At the motion hearing, Appellant argued he was questioned without a parent or juvenile officer present. Now he argues he was not advised of his right to have a parent or juvenile officer present during questioning. Therefore, we review for plain error. Nylon, 311 S.W.3d at 884.

Section 211.059 provides that a child taken into custody for criminal conduct is to be advised of certain rights prior to questioning. Section 211.059.1 states that the child shall be advised:

> (1) That he has the right to remain silent; and
> (2) That any statement he does make to anyone can be and may be used against him; and

9

(3) That he has a right to have a parent, guardian or custodian present during questioning; and
(4) That he has a right to consult with an attorney and that one will be appointed and paid for him if he cannot afford one.

There is no dispute that Appellant was advised of his <u>Miranda</u> rights. While there exists a contention by Appellant that he was not advised he had a right to have a parent or juvenile officer present during questioning, the question at issue was not an interrogation-type of question. Officer Krebs's question posed to Appellant as to whether he had recently gotten his hair cut was not admitted or used to imply Appellant was guilty of the crimes with which he was charged. Rather, it was merely used to explain the circumstances by which Appellant was identified at the time of his arrest. At the hearing on the motion to suppress, Officer Krebs testified that the photograph he used to identify Appellant portrayed him with medium-length dreadlocks, and at the time Appellant answered the door at his apartment, his hair was cut short. After the police arrested Appellant and read him his rights, which Appellant confirmed he understood and then said he knew why they were there, Officer Krebs asked him if he had recently cut his hair. The purpose of this question was not "guilt-seeking," as Appellant claims. In fact, it had nothing to do with the crimes, but rather explained how police confirmed Appellant's identity despite his hairstyle differing from the photograph they had of him for identification purposes. Officer Krebs also testified he could tell from looking at Appellant at the time of his arrest that he had cut his hair, prior to asking him about it. Thus, there was no violation of Appellant's statutory entitlement to be advised he had a right to have a parent, guardian or custodian present during questioning when Officer Krebs asked him whether he had gotten his hair cut recently prior to taking him into custody.

10

Not all government inquiries to a suspect in custody constitute "interrogation" within the scope of Miranda. State v. Isaiah, 874 S.W.2d 429, 436 (Mo.App. W.D. 1994); United States v. McLaughlin, 777 F.2d 388, 391 (8th Cir.1985). Requests for basic background information for purposes of identification generally do not constitute "interrogation." Isaiah, 874 S.W.2d at 436; McLaughlin, 777 F.2d at 391-92. Moreover, questioning that occurs during routine police booking procedures that is not "part of any process of interrogation designed to elicit any inculpatory statements" does not constitute "interrogation" as proscribed by Miranda. Isaiah, 874 S.W.2d at 436. This reasoning is likewise applicable to the advisory rights set forth in Section 211.059.1. Prior to any interrogation-type of questions, Appellant was transported to the juvenile division of the circuit court.

Finally, Appellant's statement that he had recently gotten his hair cut was merely cumulative to Officer Krebs's testimony that he observed Appellant had recently gotten his hair cut, as the dreadlocks were gone and his hair was cut close to his head.

Because of these reasons, the trial court did not plainly err in overruling Appellant's motion to suppress his statement, his objection to the admission of his statement, or his motion for new trial based on alleged error in the admission of the statement. Appellant's Point III is denied.

On March 31, 2014, Appellant filed a Motion to Remand the Case to the Trial Court to Consider Newly Discovered Evidence, based upon two letters purportedly written by McKinney intimating his statements to police implicating Appellant were false. Appellant has failed to present any factual support to authenticate his allegation that McKinney wrote these letters. Further, we deem McKinney's purported new claims

11

of Appellant's innocence inherently incredible because recanting testimony is exceedingly unreliable and is regarded with suspicion. State v. Manley, 414 S.W.3d 561, 566 (Mo.App. E.D. 2013). Also, we find McKinney had a motive to falsely recant in his letter as he and Appellant participated in this crime together and are fellow gang members. Testimony from co-defendants after trial showing a willingness to exonerate the defendant has an inherent lack of credibility. State v. Magee, 911 S.W.3d 307, 312-13 (Mo.App. W.D. 1995). See also, State v. Gray, 24 S.W.3d 204, 208-10 (Mo.App. W.D. 2000) (newly-discovered evidence of affidavit of the defendant's fellow inmate had "no proof of credibility"). For these reasons, Appellant's motion is denied.

## Conclusion

The judgment of the trial court is affirmed.

Sherri B. Sullivan, J.

Lawrence E. Mooney, P.J., and
Robert G. Dowd, Jr., J., concur.

12