Angela T. Quigless, J.
Ahmaad Betts ("Defendant") appeals from the judgment of the trial court convicting him of three counts of first-degree robbery and three counts of armed criminal action, following a jury trial. Defendant asserts three points on appeal, arguing: (1) the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence regarding his identity; (2) the trial court plainly erred in imposing the State's recommended sentence of twenty-two years because the sentence punished him for exercising his constitutional right to a jury trial; and (3) the trial court abused its discretion in admitting evidence that Co-Defendants implicated Defendant in statements made during their guilty pleas. We affirm.
Factual and Procedural Background
Defendant was arrested and charged with three counts of first-degree robbery, three counts of armed criminal action, one count of unlawful use of a weapon, and one count of misdemeanor possession of a controlled substance. The State elected to proceed *50 to trial only on the counts of first-degree robbery and armed criminal action. Viewed in the light most favorable to the judgment, the evidence presented at trial established the following facts.
A. The Robberies
On June 22, 2015, between the hours of 5:00 am and 7:00 am, Defendant and three of his friends, Cory Thomas ("Thomas"), Nicholas Bryant ("Bryant"), and Derrick Mason ("Mason") (collectively "Co-Defendants"), robbed three victims at gunpoint. Defendant, Thomas, Bryant, and Mason (collectively "Defendants") were driving around North St. Louis in a white car with a piece of plastic covering the opening for the rear passenger-side window. Defendants were all wearing hoods over their heads and masks covering their entire faces, except their eyes. They were armed with at least two guns.
The first victim ("Victim 1") was walking to the bus stop to go to work when Defendants slowly drove past him and parked in a nearby empty lot. Defendant and one of his friends got out of the car wearing hoodies and ran towards Victim 1 carrying guns. As they approached, Victim 1 laid down on the ground. One of the Defendants held a gun to Victim 1's head and told him not to look, while the other went through his pockets. They took Victim 1's bag, wallet, and phone. Victim 1 returned home and told his girlfriend he was just robbed. She called the police, and they came to the apartment to investigate.
The second victim ("Victim 2") was walking his dog when Defendants drove by and parked on the street a few houses up. When Victim 2 got near Defendants' car, Defendant and one of his friends got out of the car wearing hoodies and masks, and ran towards Victim 2. They were armed with a gun and ordered Victim 2 to "[g]ive me what you got." They took Victim 2's wallet, $40 in cash, a credit card, and his phone. Victim 2 wrote down the license plate and called the police. Before Victim 2 could cancel his credit card, it was used at a nearby pharmacy and grocery store. Victim 2 provided the police with the license plate.
While the police were investigating the second robbery, they had to leave to investigate a robbery that was just called in regarding a third victim ("Victim 3"). Victim 3 was an elderly woman who was waiting for her friend to pick her up to go to church. Victim 3 walked off her front porch to get the newspaper, and when she returned, Defendant and one of his friends were waiting for her on her front porch. One of them yelled for her to give them her purse. When she did not immediately give them her purse, Defendant "conked [her] in the head with the butt of a gun," grabbed her purse, and left. Victim 3 called 911, and was transported to the hospital, where they stitched up the wound on her head.
Shortly after the robberies, the police put out a description of Defendants' vehicle, including the license plate provided by Victim 2. Five minutes later, a vehicle matching the description with three or four young men inside drove past Detective Keaton Strong ("Detective Strong"), who attempted to follow but lost sight of the vehicle. Ten minutes later, Detective Strong received another dispatch giving a possible location for the vehicle. The vehicle was parked in front of an apartment just down the street from Victim 1's home. The vehicle was parked there for roughly ten minutes before Detective Strong arrived to investigate. The vehicle's license plate matched the number provided by Victim 2 except for one letter. Victim 2 had mistaken the letter "D" for a "0" or an "O." Within fifteen minutes of confirming the vehicle's presence, the police took all *51 three Co-Defendants and Defendant's juvenile brother into custody. Defendant was not present and was not arrested at that time.
None of the Victims were able to identify any of Defendants because they were wearing hoodies and had their faces covered with masks. However, Victim 2 was able to identify the vehicle parked outside of the apartment where Co-Defendants were arrested as the one that was used in the robbery. Additionally, at the time of the arrest, one of Co-Defendants was in possession of a backpack containing a firearm, a small amount of marijuana, and a purse, which Victim 3 identified as the one that had been stolen from her.
All three Co-Defendants were interrogated by Detective Donald Thurmond ("Detective Thurmond") and eventually confessed to the robberies. Thomas told Detective Thurmond he committed the robberies with Bryant, Mason, and a fourth person he refused to identify. Thomas also admitted he was the driver and the lookout for the robberies, and that they were armed with a firearm. Thomas was charged with the robberies and pleaded guilty. During his guilty plea hearing, Thomas indicated that Defendant was involved in each of the robberies.
While being interrogated, Mason also admitted his involvement in the robberies, and told Detective Thurmond that Thomas, Bryant, and Defendant were in the car with him. Mason said he waited in the car while Defendant and Bryant robbed Victim 1, but that he and Defendant were the ones who got out of the car to rob Victims 2 and 3, and that Defendant was the one with the gun during those robberies. Mason was also charged with the robberies and pleaded guilty. During his plea hearing, Mason indicated that Defendant was involved in each of the robberies.
Based on the statements from Thomas and Mason, Defendant was arrested and charged with three counts of first-degree robbery, three counts of armed criminal action, one count of unlawful use of a weapon, and one count of misdemeanor possession of a controlled substance.
B. Procedural History and Trial
Defendant pleaded not guilty, and demanded a jury trial. The State dropped the charges for unlawful use of a weapon and misdemeanor possession of a controlled substance. The State offered to recommend a sixteen-year sentence in exchange for Defendant's guilty plea. Defendant declined the offer. The State subsequently reduced the offer to a twelve-year recommended sentence, which Defendant also declined.
Prior to trial, Defendant filed a motion in limine to exclude any out-of-court statements identifying Defendant as one of the individuals who committed the robberies. Specifically, Defendant was seeking to exclude Mason's statements to the police implicating Defendant, and the transcripts of the plea hearings for Thomas and Mason where they indicate Defendant was involved in the robberies.
The trial court did not rule on this motion, and the case proceeded to trial. During opening statements, Defendant stated:
[T]he State of Missouri, the St. Louis police department caught the three perpetrators of this crime; Cory Thomas, Derrick Mason, Nicholas [Bryant]. As you will hear from them, one has pleaded guilty, one is pleading guilty, and the other has pleaded guilty and is already in prison for these crimes. The perpetrators of these crimes have been caught.
During the State's case-in-chief, all three victims testified that they were robbed, consistent with the facts set forth above.
*52 None of the victims were able to identify Defendant as one of the individuals who robbed them because the perpetrators were wearing hoods over their heads and masks covering their faces. Detective Thurmond testified regarding Co-Defendants' confessions to the robberies, including Mason's statements that Defendant was involved in the robberies.
The State also called Co-Defendants Thomas and Mason as witnesses. Thomas admitted that he was involved in the robberies and that there were three other people in the vehicle with him at the time, including himself, Mason, Bryant, and a fourth individual named "Damon." This was the first time Thomas mentioned "Damon" as the fourth individual involved in the robberies. Thomas conceded that his testimony differed from what he told police during his interrogation. Thomas insisted he was telling the truth, and expressly denied that Defendant was involved in the robberies. However, in response to the State's questioning, Thomas admitted that he pleaded guilty to the robberies, and acknowledged he agreed during his plea hearing that Defendant was involved in the robberies.[1]
When the State called Mason as a witness, Defendant renewed his argument in the motion in limine seeking to exclude out-of-court statements implicating Defendant in the robberies, including statements Mason made during his plea hearing. The court overruled the motion, but allowed Defendant a continuing objection to the evidence. Mason then testified that he was involved in the robberies, but stated that only three individuals were involved, including himself, Thomas, and Bryant. Mason acknowledged that he pleaded guilty to the robberies, but stated he did not recall telling the plea court that Defendant was involved in the robberies. When the State confronted Mason with his statements implicating Defendant during his plea hearing, Mason stated that he lied at his plea hearing when he said Defendant committed the robberies with him, and that the version of the robberies he told the jury was the truth.
Following the presentation of evidence, Defendant filed a motion for judgment of acquittal, which was denied. The jury found Defendant guilty of all counts as charged. Defendant waived jury sentencing. The court ordered a Sentencing Assessment Report ("SAR"), which concluded Defendant had no remorse for the crimes. The court held a sentencing hearing.
During the sentencing hearing, the State recommended concurrent twelve-year sentences for two of the counts of first-degree robbery and two of the counts of armed criminal action, and twelve-year sentences for the remaining counts of first-degree robbery and armed criminal action, to be served concurrently with each other but consecutively with all other counts, for a total aggregate sentence of twenty-two years in prison. The State argued that "[Defendant] declined to accept responsibility in this case and exercised his right to a trial. And he has a constitutional right to do that, Your Honor, but that decision comes with consequences, and it comes with the consequence of not accepting responsibility for these violent acts, three separate incidents." The State concluded a twenty-two year sentence was appropriate based on the facts and circumstances of the case, including the SAR conclusion that Defendant had "no remorse" for his crimes, as well as "the sentences imposed for the co-defendants who accepted responsibility *53 when [Defendant] made the decision not to."
Defendant asked the court "to consider keeping the sentences [for Defendant] in parity with the co-defendants," who had received sentences between ten and sixteen years. Defendant also argued "[t]he State's position on a failure to take responsibility is defacto [sic] a trial tax for his, you know, exercising a constitutional right, and quite frankly I find it inappropriate, bordering on unconstitutional."
After considering the arguments by the State and Defendant, the court briefly summarized Defendant's crimes and discussed the harm the victims suffered as a result, focusing on the elderly woman who was robbed by Defendant while on her way to church. The court noted that she was visibly "shaking" during her testimony, and stated:
[T]he psychological damage to her outweighs the physical because oftentimes when these assaults occur, robberies occur, rapes occur, someone once said you've stolen the other person's life, the enjoyment they had in life, things they would do on a spring day or when they look out and see snow and they want to go for a walk. Now they don't do it because they're afraid. Their life has been stolen from them, and it's a sad thing, very sad.
The court then sentenced Defendant, pursuant to the State's recommendation, to consecutive twelve-year sentences for two counts of first-degree robbery and two counts of armed criminal action, and consecutive ten-year sentences for the remaining counts of first-degree robbery and armed criminal action, for an aggregate sentence of twenty-two years. Defendant filed a motion for a new trial, which was denied by the trial court. This appeal follows.
Points on Appeal
Defendant asserts three points on appeal. In Point I, Defendant argues the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to support his convictions in that "the sole evidence incriminating [Defendant] in the commission of the offenses consisted of prior inconsistent statements (i.e., confessions), which [Co-Defendants] made to police out of court and to plea courts, under oath, at their respective guilty plea hearings, and later recanted under oath during their trial testimonies." In Point II, Defendant argues the trial court plainly erred in following the State's sentencing recommendation to enhance Defendant's punishment for his conviction of the offenses by imposing an aggregate sentence of twenty-two years in prison based on Defendant's decision to exercise his right to a jury trial. In Point III, Defendant argues the trial court erred in allowing the State to use the transcripts from Co-Defendants' guilty pleas as substantive evidence of Defendant's guilt of the offenses for which he was on trial.
Discussion
I. Point One-Sufficiency of the Evidence
In Point I, Defendant argues there was insufficient evidence to support his convictions because the only evidence identifying Defendant as the perpetrator was prior inconsistent statements made by Co-Defendants to police officers investigating the robberies and in court during their guilty pleas, which were later recanted under oath during Defendant's trial.
Our review of a claim that there was insufficient evidence to support a criminal conviction is limited to a determination of whether the State has introduced sufficient evidence from which a reasonable *54 juror could have found each element of the crime beyond a reasonable doubt. State v. McBenge , 515 S.W.3d 706, 716-17 (Mo. App. E.D. 2016). We view the evidence, including all inferences reasonably drawn therefrom, in the light most favorable to the State. Id. We do not re-weigh the evidence, but instead give great deference to the trier of fact. Id. However, we may not supply missing evidence, or give the State the benefit of unreasonable, speculative, or forced inferences. Id.
Defendant does not challenge the sufficiency of the evidence relating to any of the elements of the crimes of first-degree robbery or armed criminal action. Defendant only challenges the evidence concerning his identity as the perpetrator. In every criminal case, the State bears the burden of proving the identity of the person who committed the crime. State v. Rockett , 87 S.W.3d 398, 403-04 (Mo. App. W.D. 2002). The evidence presented at trial must establish, beyond a reasonable doubt, that the defendant was the person who committed the charged crime. Id.
Here, none of the victims identified Defendant as one of the perpetrators either during pre-trial lineups or during trial, and there was no physical evidence linking Defendant to the robberies. The only evidence identifying Defendant as the perpetrator was confessions implicating Defendant made by Co-Defendants to police officers investigating the robberies and in court during their guilty pleas, which were later recanted under oath during Defendant's trial.
Defendant argues that "recanted prior inconsistent statements [were] insufficient to prove beyond a reasonable doubt that [Defendant] was involved in the commission of the offenses," relying on State v. Pierce , 906 S.W.2d 729, 736 (Mo. App. W.D. 1995). We disagree. In State v. Pierce , the Western District held that, in a prosecution for sexual assault, the victim's prior inconsistent statement is not sufficient evidence to prove a fact essential to the case without corroboration when the statement is "so contradictory and in conflict with physical facts, surrounding circumstances and common experience." Id. at 734-35 (quoting State v. Silvey , 894 S.W.2d 662, 673 (Mo. banc 1995) ). However, in State v. Porter , the Missouri Supreme Court rejected the Western District's reasoning in Pierce , and expressly abolished the corroboration rule and the doctrine of destructive contradictions, which were the legal basis of the court's holding in Pierce . State v. Porter , 439 S.W.3d 208, 212-13 (Mo. banc 2014).
The corroboration rule is abolished in Missouri. Missouri appellate courts reviewing the sufficiency of the evidence to support a conviction for a sex crime, as in all other criminal cases, will review challenges to the sufficiency of the evidence pursuant to generally applicable standard of review.
...
[T]he destructive contradictions doctrine ... is abolished because, like the corroboration rule, it too requires appellate courts to engage in credibility determinations that are properly left to judges and juries sitting as triers of fact.
Id. Therefore, we must reject Defendant's argument that Co-Defendants' recanted prior inconsistent statements, without corroborating evidence, were insufficient to establish Defendant's identity as the perpetrator. Like the holding in Pierce , Defendant's argument relies on the corroboration rule and the doctrine of destructive contradictions, both of which were abolished by the Supreme Court in Porter . See id. at 734.
Since Pierce , courts have consistently held that prior inconsistent statements are *55 admissible as substantive evidence, pursuant to Section 491.074.[2] See State v. Stufflebean , 548 S.W.3d 334 (Mo. App. E.D. 2018). Section 491.074 provides: "Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement."
Moreover, courts have recognized that "a prior inconsistent statement can be the sole basis for a guilty verdict." State v. Lewis , 431 S.W.3d 7, 12 (Mo. App. E.D. 2014) (citing State v. Garner , 14 S.W.3d 67, 72 (Mo. App. E.D. 1999) ). This rule is based on the standard of review for appellate courts, which gives great deference to the trier of fact regarding factual findings and credibility determinations. See Porter , 439 S.W.3d at 212-13. Because prior inconsistent statements are admissible as substantive evidence in criminal cases under Section 491.074, an appellate court cannot determine such a statement is insufficient evidence to support a conviction without "engag[ing] in credibility determinations that are properly left to judges and juries sitting as triers of fact." Id.
Co-Defendants' prior inconsistent statements made to the police during the interrogation as well as to the plea court during their guilty pleas were properly introduced by the State as substantive evidence of Defendant's identity pursuant to Section 491.074. See Stufflebean , 548 S.W.3d at 344. These statements were sufficient evidence for a reasonable jury to find Defendant was one of the individuals who committed the robberies. Lewis , 431 S.W.3d at 12. Accordingly, we find the trial court did not err in denying Defendant's motion for judgment of acquittal. Point I is denied.
II. Point Two-Sentencing
In Point II, Defendant argues the trial court plainly erred in accepting the State's recommendation and sentencing him to a total of twenty-two years in prison because the sentences constituted a "trial tax" that effectively punished Defendant for exercising his constitutional right to a jury trial. We disagree.
While typically a court's sentencing decision is reviewed for abuse of discretion, Defendant concedes he failed to preserve this issue for appellate review because he did not object to the sentence imposed. See State v. Collins , 290 S.W.3d 736, 746 (Mo. App. E.D. 2009). As such, we review this point only for plain error, pursuant to Rule 30.20.[3] In reviewing for plain error, we will first determine whether, based on the facts and circumstances of the case, the trial court committed error that was evident, obvious, and clear. State v. Collins , 154 S.W.3d 486, 491 (Mo. App. W.D. 2005). Second, we will determine whether the trial court's error so prejudiced the defendant that a manifest injustice or miscarriage of justice occurred. Id.
A sentencing court has broad discretion in imposing a sentence within the range of punishment. State v. Mort , 321 S.W.3d 471, 485 (Mo. App. S.D. 2010). Section 557.036.1 provides that a trial court "shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly."
*56 See Collins , 290 S.W.3d at 746. "The trial court has a duty to impose a sentence on a case-by-case basis, and to fashion the punishment to both the crime and the criminal." Id. "We assume the trial court's experience and expertise enables the trial court to consider appropriate sentencing factors and to disregard improper matters." Id.
Although a sentencing court has substantial discretion when imposing sentencing, that discretion is not without limits. Id. A court cannot punish a defendant more harshly for exercising his right to plead not guilty, as this would violate the defendant's constitutional right to a jury trial. Id. However, a court may take into account the character of the defendant, including the defendant's attitude concerning the offense. Id. A court may also consider the defendant's failure to accept responsibility for the crime. See State v. Smith , 422 S.W.3d 411, 421 (Mo. App. W.D. 2013). Where a defendant claims the sentencing court increased his sentence as a punishment for exercising his constitutional right to a jury trial, the defendant must establish not only that the court considered the defendant's decision to go to trial during sentencing, but also that it was "the determinative factor" in the sentence the defendant received. Collins , 290 S.W.3d at 747 (citing State v. Palmer , 193 S.W.3d 854, 857 (Mo. App. S.D. 2006) ).
Defendant's argument that the trial court imposed a harsher sentence to punish Defendant for exercising his right to a jury trial lacks merit because nothing in the court's comments regarding sentencing indicates the trial court considered Defendant's decision to exercise his right to a jury trial when deciding what sentence to impose. See Collins , 290 S.W.3d at 747. We acknowledge the court imposed the sentence the State had recommended, arguing it was appropriate given Defendant's failure to take responsibility for the offenses, his decision to plead not guilty, and the finding in the SAR that Defendant had no remorse for the crimes. However, the court did not mention during sentencing either Defendant's decisions to plead not guilty and exercise his right to a jury trial, or Defendant's failure to take responsibility for the crimes. Instead, the court focused on the nature of Defendant's crimes and the harm suffered by the victims. Specifically, the court focused on the harm suffered by the elderly woman who was robbed by Defendant while on her way to church. The court noted that she was visibly "shaking" during her testimony, and stated:
[T]he psychological damage to her outweighs the physical because oftentimes when these assaults occur, robberies occur, rapes occur, someone once said you've stolen the other person's life, the enjoyment they had in life, things they would do on a spring day or when they look out and see snow and they want to go for a walk. Now they don't do it because they're afraid. Their life has been stolen from them, and it's a sad thing, very sad.
Nothing in the record indicates the court imposed a harsher sentence on Defendant as punishment for exercising his right to a jury trial, or that this was "the determining factor" in the sentence Defendant received. See id.
Nonetheless, Defendant argues the trial court did consider Defendant's decision to exercise his constitutional right to a jury trial during sentencing because the court accepted the State's recommended sentence, which was based on the State's argument that Defendant's failure to take responsibility by pleading guilty warranted a longer sentence because there are "consequences of not accepting responsibility." We disagree. Even if the court had considered *57 Defendant's failure to take responsibility when imposing sentencing, this would not render the sentence unconstitutional unless Defendant's decision to go to trial was "the determinative factor the court used in deciding [Defendant]'s sentence." See Smith , 422 S.W.3d at 421 ("[A] trial court does not err in sentencing when it considers other factors aside from a defendant's assertion of his or her constitutional right, so that a comment on the defendant's assertion of rights is not the determinative factor in imposing sentence."). However, the record clearly demonstrates the determining factor in Defendant's sentence was the harm suffered by the victims as a result of Defendant's crimes.
Based on the record before us, we cannot say the trial court impermissibly subjected Defendant to a harsher punishment because he exercised his constitutional right to a jury trial. Accordingly, considering all of the factors, we find the trial court did not err, plainly or otherwise, in sentencing Defendant to twenty-two years. Point II is denied.
III. Point Three-Admissibility of Co-Defendant Confessions
In Point III, Defendant argues the trial court erred in admitting, as substantive evidence, prior inconsistent statements made by Co-Defendants during their guilty pleas, which implicated Defendant in the robberies. We disagree.
We review a trial court's decision to admit evidence for an abuse of discretion. State v. Ellis , 512 S.W.3d 816, 825 (Mo. App. W.D. 2016). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before it, and is so unreasonable as to indicate a lack of careful consideration. Id. If an abuse of discretion is found, we will reverse only where the error resulted in prejudice so substantial that it deprived the defendant of a fair trial. Id.
As a general rule, "a conviction or guilty plea of a co-defendant cannot be used as substantive evidence against the other co-defendant[.]" State v. Akins , 829 S.W.2d 619, 621 (Mo. App. E.D. 1992) (citing State v. Borden , 605 S.W.2d 88 (Mo. banc 1980) ). The rationale for this rule was explained in State v. White , where we stated:
The general rule is that where two persons have been jointly indicted for the same offense, but are separately tried, a judgment of conviction against one of them is not competent on the trial of the other, inasmuch as such conviction is no evidence either of joint action or the guilt of the accused. The same rule is applicable where two persons are jointly charged and one pleads guilty. And, equally applicable where two or more are separately charged for the same crime. In this state it is deemed error, usually reversible error, to show in evidence or tell the jury that a jointly accused defendant has been convicted or plead guilty. Thus, a defendant is entitled to be tried on his own without having his guilt prejudged by what has happened to another, it being considered an elementary principle of justice that one man shall not be affected by another's act or admission, to which he is a stranger.
State v. White , 952 S.W.2d 802, 805 (Mo. App. E.D. 1997) (citations and quotations omitted).
However, this rule is not without exceptions. As discussed in Point I supra , prior inconsistent statements are admissible under Section 491.074. We see no reason why they should be excluded merely because they were made during a guilty *58 plea hearing. This is especially true when the prior inconsistent statement is from a co-defendant who takes the stand and recants his prior testimony. Defendant cites no authority for the proposition that Section 491.074 does not apply to prior inconsistent statements made by a co-defendant during a guilty plea hearing, and we have found none. "[T]he mere fact that evidence may be inadmissible for one purpose does not preclude its admission for an alternative legitimate purpose." Rodriguez v. Suzuki Motor Corp. , 996 S.W.2d 47, 59 (Mo. banc 1999). "If evidence is admissible for one purpose but improper for other purposes, it should be received, subject to limiting instruction, if requested." State v. Jones , 979 S.W.2d 171, 182 (Mo. banc 1998). Here, Co-Defendants' statements implicating Defendant during their guilty pleas were admissible as prior inconsistent statements under Section 494.074 because they directly contradicted their testimony at trial denying Defendant participated in the robberies. See Stufflebean , 548 S.W.3d at 344. The State did not introduce the fact that Co-Defendants pleaded guilty for the improper purpose of showing Defendant's guilt by mere association, which would have violated Defendant's right to a fair trial. See White , 952 S.W.2d at 805.
Additionally, Defendant opened the door to this evidence. See State v. Shockley , 410 S.W.3d 179, 194 (Mo. banc 2013). Under the doctrine of curative admissibility, "[o]therwise inadmissible evidence can nevertheless become admissible because a party has opened the door to it with a theory presented in an opening statement or through cross-examination." Id. "Where the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." Id. (citations and quotations omitted); State v. Rutter , 93 S.W.3d 714, 727 (Mo. banc 2002). Moreover, the evidence may be used substantively in order to prove the State's version of the facts on the issue the defendant injected into the trial. See State v. Watson , 391 S.W.3d 18, 23 (Mo. App. E.D. 2012). "In such situations, prosecutors have been permitted to introduce additional evidence, notwithstanding that the facts elicited may be prejudicial to the defendant [and] this evidence can come in even though [it] was in the first place illegal." Id. (alteration in original, citations and quotations omitted); see also State v. Gott , 523 S.W.3d 572, 582 (Mo. App. S.D. 2017) (holding defendant opened the door to inadmissible evidence concerning his post-Miranda warning silence when he implied, during his opening statement, that he had no opportunity to explain his side of the altercation to law enforcement).
We find Defendant injected the issue of Co-Defendants' guilty pleas during opening statement by stating:
[T]he State of Missouri, the St. Louis police department caught the three perpetrators of this crime; Cory Thomas, Derrick Mason, Nicholas [Bryant]. As you will hear from them, one has pleaded guilty, one is pleading guilty, and the other has pleaded guilty and is already in prison for these crimes. The perpetrators of these crimes have been caught.
Generally, a co-Defendant's guilty plea implicating the defendant would not be admissible as substantive evidence during the State's case-in-chief. See Akins , 829 S.W.2d at 621 ; White , 952 S.W.2d at 805. However, once Defendant opened the door by arguing Co-Defendants' guilty pleas proved the perpetrators were caught and Defendant was exonerated, the State was allowed to introduce evidence demonstrating the guilty pleas, in reality, expressly *59 implicated Defendant in the robberies See Shockley , 410 S.W.3d at 194 ; Rutter , 93 S.W.3d at 727. This is not a case where reversal is required because "the prosecutor injected evidence of the codefendant's plea of guilty as substantive evidence of defendant's guilt." See State v. Wilkins , 59 S.W.3d 591, 592 (Mo. App. E.D. 2001) (reversing defendant's conviction where the State mentioned during its opening statement that a co-defendant pleaded guilty to the crime defendant was charged with, and subsequently introduced, as substantive evidence, a transcript of the co-defendant's guilty plea hearing where he implicated the defendant in the crime). On the contrary, Defendant was the one to inject this issue into his trial.
Accordingly, we find the trial court did not abuse its discretion in admitting Co-Defendants' statements implicating Defendant in the robberies during their guilty pleas because they were admissible as prior inconsistent statements, and Defendant opened the door to this evidence. See Shockley , 410 S.W.3d at 194. Point III is denied.
Conclusion
The judgment of the trial court is affirmed.
Roy L. Richter, P.J., and Robert M. Clayton III, J., concur.

Defendant did not object to the State's questions regarding Thomas's guilty plea and the statements Thomas made at his plea hearing implicating Defendant in the robberies.

All statutory references are to RSMo (2000), unless otherwise indicated.

All rule references are to Missouri Supreme Court Rules (2018), unless otherwise indicated.